**PROVIDENT SAVINGS BANK & TRUST CO et v TAX COMMISSION et**

Ohio Common Pleas, Hamilton Co

Decided Oct 30, 1931

Shook, Davies, Hoover & Beall, Cincinnati, for plaintiffs in error.

Louis J. Schneider, Prosecuting Attorney, Cincinnati, Walter M. Locke, Asst. Prosecuting Attorney, Cincinnati, and Thomas C. Lavery, Cincinnati, for defendants in error.

## OPINION

By MATTHEWS, J.

These causes are proceeding under §5611-2, GC, to review the findings of the Tax Commission of Ohio that the value of certain real estate fixed for taxation purposes by the board of revision of Hamilton County for the year 1931 was its true value in money. After the county auditor had appraised this real estate the owners filed complaint with the county board of revision under favor of §5609, GC, and after its find-

ing of the valuation the owners appealed to the Tax Commission of Ohio under favor of §5610, GC, and it was upon their appeal that the valuation now under review was made, and which is claimed to be grossly excessive.

By §5611-1, GC, it is enacted that the valuation fixed by the board of review "shall become final and conclusive for the current year, unless reversed, vacated or modified as hereinafter provided." The proceeding to effect the reversal, vacation or modification is prescribed by §5611-2, GC, already referred to. That procedure has many of the attributes of an error proceeding. It is begun by the filing of a petition in error in the Common Pleas Court. The county auditor and the Tax Commission must be made parties defendant, and, unless they waive it, summons in error must be served upon them. The latter is required, upon demand, to deliver to the plaintiff in error a certified transcript of its final order and the evidence in the proceedings upon which such order is based. The plaintiff in error is required to file this transcript with the clerk of the court. After having thus imposed these indicia of an error proceeding upon this remedy, the legislature then enacted that:

"The court may call witnesses and consider other evidence in addition to such transcript in the hearing of such a proceeding in error. * * * No determination of the tax commission as to the value of property for taxation shall be reversed, vacated or modified unless it is shown by clear and convincing evidence that the value of the property as determined by the tax commission is not the true value in money of such property."

In **Floyd v The Manufacturers Light & Heat Co., 111 Oh St 57**, the court held that notwithstanding the provision for introduction of evidence aliunde the record, the proceeding was an error proceeding, saying in the first paragraph of the syllabus that:

"Sec 5611, GC, making provision for review of an order of the tax commission, is an error provision. The permission to call witnesses and hear other evidence in the Common Pleas Court is an aid to the court in determining the matter which does not change its character."

And at page 65:

"It would seem, therefore, that the Common Pleas Court, in its discretion, might either make a finding of value and render final judgment, or reverse and remand. It must, of course, be a sound judicial discretion and should only render final judgment when the testimony is such as to require no further data or information and where the case is one of sufficient clearness to dispense with the employment of taxation experts."

Providing an error proceeding as a means of review resulted, in my opinion from a recognition of the limited field of judicial intervention permissible under the constitution discussed later in this opinion.

At the trial the plaintiffs in error introduced in evidence the transcript of the proceeding before the Tax Commission and rested. This transcript contains the testimony of one witness, who, after testifying to facts showing experience in real estate transactions in the locality and qualification to express an opinion on the subject, stated that it was his opinion that the valuation of those lots that did not abut on Reading road was too high. The general reason given was that the taxing authorities in assessing all the lots regardless of whether they abutted on Reading road at the same value failed to take into account that the interior lots did not have the value that accrued to the Reading road lots by reason of abutting on an improved main thoroughfare and facing a well maintained golf course, located on the opposite side of the thoroughfare. The ill-advised plan of the subdivision and the style of the improvements were given as factors detracting from the value of the property as a whole, but as the witness accepted the valuation of the Reading road lots as valid, his objection rested principally upon his contention that the interior lots were less valuable. There were a few instances in which he claimed that specific lots, because of location, shape or contour, should have been given a lower valuation, but these instances must, in my judgment, be determined by the rule applicable to the whole.

The transcript shows that the valuation made by the auditor and the board of revision was supported by the opinion of Messrs. Costello, Mulford and Liddell, all members of the real estate board, and licensed realtors. Their testimony, however, is not incorporated in the transcript, although under §5610, GC, it was the duty of the auditor to include their testimony, and it is manifest that it was before the examiner and served as a predicate for his

finding. The transcript is incomplete in that respect and cannot be said to contain all the evidence. This would seem to prevent a review of the question of fact.

**Lindsey v Public Utilities Commission, 111 Oh St 6.** Perhaps the transcript could be corrected so as to include the appraisal made by the three licensed realtors, upon which the auditor and board of revision acted.

In this situation what disposition should be made of this case? Should the finding of the Tax Commission as to the valuation be reversed, vacated or modified?

In the process of deciding we must bear in mind that the purpose of this action is to subject to judicial control one of the great powers of government of a legislative and executive character. It presents the question of the extent the judicial department is empowered by the statute when construed in the light of constitutional limitations.

In seeking for the answer to the question presented we must bear in mind too that the record does not bring under review the action of an administrative board somewhat novel in character exercising a synthetic power resulting from a blending or admixture of legislative, executive and judicial functions. On the contrary the subject for judicial review is administrative action by the traditional branch of the government to which it has been confided by the constitution and which, under the constitution, is a coordinate branch of the government not to be controlled when acting within its authority by either of the other branches.

While no government is formed for the purpose of taxing, the power to tax is indispensable to the accomplishment of most of the purposes for which governments are created. Without it government would be helpless and for that reason the taxing power is uncontrolled except only in the respect that the constitution itself imposes limitations. In the absence of any such limitation the power to tax is equivalent to the power to destroy. One limitation upon this power is that imposed by the "Due Process Clause" of the **Ohio Constitution** (§§1, 10 and 19 of Art. 1) and the 14th Amendment of the United States Constitution.

This great power of taxation is of a political nature. In the division of the powers of government into the three great departments it naturally falls into the legislative and executive departments. Being political, the extent of its use, the objects upon which it is exerted and the procedure of its application are matters of policy confided by the Constitution to the legislature, without any power in the judicial department to substitute its view of policy or discretion. Levying and collecting taxes is non-judicial in character. Rees v Watertown, 19 Wall. 107; Yost v Dallas Co., 236 U. S. 50; Heine v Levee Commissioners, 19 Wall. 655; Thompson v Allen Co., 115 U. S. 550.

The construction of a grand duplicate for taxation purposes, and the supervision of collections to be credited against it, would strike the mind of both lawyer and layman as strange work to confide to a court. The taxing process in its normal operation does not present a "case or controversy" involving legal rights to be declared and enforced.

If an administrative officer or board should assume to levy a tax without legislative authority the action would present a judicial question between the officer or board and the aggrieved person. In such a situation the court would construe and apply the law, and if the validity of the administrative action depended upon the existence of certain facts the court would review the administrative finding as to the existence of the jurisdictional facts.

Also, if, under the guise of imposing a tax, property would be taken without due process of law, a case or controversy between the governmental agency and the person upon whom it is sought to impose the tax is presented to be determined by the application of constitutional provisions. But due process of law in matters of taxation is a quite different thing from due process as applied to judicial procedure. With the policy of the method of taxation the courts are given no jurisdiction to interfere. So where the tax is levied by the legislature itself, or by a fixed rule adopted by legislative act, no opportunity to be heard in advance need be given, and the legislative act is conclusive, unless it is so unreasonable and arbitrary as to be a palpable abuse of power. In such a case the only judicial question would be that of legislative abuse of power,—in other words, spoliation under the guise of taxation. Spencer v Merchant 125 U. S. 345; French v Barber Asphalt Paving Co., 181 U. S. 324.

Where the legislature instead of fixing the tax itself, authorizes an administra-

tive officer or board to determine whether, in what amount and upon whom it shall be levied, due process of law requires that the taxpayer at some stage before the tax becomes irrevocable shall be given notice and an opportunity to be heard. This notice and hearing, however, are very much less formal than is required by due process as applied to judicial proceedings. Londoner v Denver, 210 U. S. 373; Browning v Harper, 269 U. S. 396; Turpin v Lemon, 187 U. S. 51; Bell's Gap R. Co. v Pennsylvania, 134 U. S. 232.

The provisions of the Ohio law for notice by the auditor with the right to a hearing before the board of revision and with a right to appeal from its valuation to the Tax Commission, far exceed the minimum requirements of due process of law upon that subject. It leaves for judicial inquiry the very limited subject of whether or not the action of the administrative officials has been in accordance with the terms of the statute, and also whether or not the action within the terms of the statute has been so unreasonable and arbitrary as to constitute palpable abuse of power in violation of the constitutional provision. That field of inquiry, though narrow, belongs to the judiciary, from which it cannot be excluded. Any court of appropriate jurisdiction can enter upon it when moved to do so in a case instituted by the person whose rights are invaded or threatened by the abuse of power. General jurisdiction to protect rights of property and person, together with the judicial oath to uphold and support the constitution, is sufficient warrant. No special legislation giving the right to resort to the courts and prescribing the procedure is necessary although special provision for judicial review may be made, as has been done in §5611 GC.

The extent of the judicial control of action taken by the legislative and executive departments has been variously expressed. It has been most frequently stated in relation to utility regulations. In Interstate Commerce Commission v Illinois Central Railroad, 215 U. S. 452 it was said that the court may not "under the guise of exerting judicial power, usurp merely administrative functions by setting aside a lawful administrative order upon our conception as to whether the administrative power has been wisely exercised." In Illinois Central Ry. v Interstate Commerce Commission, 206 U. S. 441, the court quoted with approval from State v Great Northern R R., 130 Minn. 57, that:

"The legislature never intended that the court should put itself in the place of the commission and try the matter anew as an administrative body substituting its finding for those of the commission. * * * The courts must not usurp legislative or administrative functions by setting aside a legislative or administrative order on their own conception of its wisdom."

The language of §5611-2, GC, leads to the belief that the legislature had in mind the limited scope of judicial review possible under the constitution and, having given the taxpayer two administrative reviews, intended to and did prescribe the procedure by which he could submit only the judicial questions to the court. §5611-1 GC recognizes some jurisdiction in the courts to reverse, vacate or modify the findings of the Tax Commission, but by the following section (§5611-2 GC) it more distinctly appears that the legislature recognized the limited power of the court over the acts of administrative boards acting within the terms of the statute conferring authority upon them and therefore enacted that the court should not disturb the finding as to the value of the property "unless it is shown by clear and convincing evidence that the value * * * is not the true value in money," which to my mind is the equivalent of saying that the court shall not assume to perform a function delegated by the constitution to another department of government, but when through the palpable abuse of power by another department—the executive in this instance—property will be taken without due process of law, its duty to uphold and support the constitution requires that it correct the action of the other department to the extent that it contravenes the constitutional guaranty. Even this limited power seems to extend beyond that exercised by the Federal courts in dealing with imports and rate making cases. Indeed as long ago as 1885 in Hilton v Merrill, 110 U. S. 97, it was held that the valuation of imports made by the appraiser was conclusive in the absence of fraud. And that is still the rule. With reference to utility rate making the Federal courts will inquire to determine whether or not property will be taken without due process of law through an abuse of power, but will

180

not fix a rate, on the theory that such would be law making and an invasion of the legislative department. Keller v Potomac Electric Power Co., 261 U. S. 428. The statute seems to contemplate that the court should in effect, enjoin the enforcement of that part of the tax that would be spoliation, thereby leaving the valid part in full force. That seems to me to be not the making of a rule for future action,—a law—but the declaring and enforcing of rights as they stand on present facts under laws already existing.

Generally speaking, the three departments of government are co-ordinate and neither has the power to interfere with either of the others acting within their respective spheres. It was manifestly intended that the departments should co-operate with one another in order that the full power of sovereignty could be exercised. Every rational presumption therefore in favor of the constitutionality of legislative and executive action is required to be given and their action should be denounced as unconstitutional only when it is manifestly so. Applied to this case the valuation must not be disturbed unless it is shown by "clear and convincing evidence" that it is not the true value in money.

In Sunday Lake Iron Co. v Wakefield, 247 U. S. 350, at 353, the court said:

"It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party."

While the case of Stanton v State Tax Commission, 114 Oh St 658, involved only the question of whether or not a mistake of law had been made in fixing the situs of property in Lake County instead of Cuyahoga County, the court discussed the subject of judicial review of the action of administrative boards and officials in administering tax laws and on the subject of reviewing their actions in fixing values, said at pages 682 and 683:

"As to those matters determined by the commission which are of ministerial, administrative, or executive character, involving matters non-justiciable, the court is nevertheless bound by the provisions of the statute to entertain an error proceeding, but in such case, if the record discloses that the commission has not proceeded in an unlawful manner, and that its determination involves only a question of valuation of property, and not the question of the liability of property to tax, or its exemption therefrom, it is the duty of the court to dispose of the error proceeding, upon the long-established rule that the court will not substitute its judgment for that of the commission, and will not disturb its finding where there has been no abuse of discretion, and where there is no element of fraud or mistake or of arbitrary or oppressive conduct on the part of the commission. In such cases the same rule should apply as this court has repeatedly applied in error proceedings from the Public Utilities Commission.

Even in the absence of express and specific definition of its powers a reviewing tribunal should not disturb the administrative finding under review unless it is so "manifestly against the weight of the evidence, and so clearly unsupported by it, as to show misapprehension, or mistake, or wilful disregard of duty." **Ohio Utility Co. v Pub. Util. Comm., 108 Oh St 144; Hocking Valley Ry. Co. v Pub. Util. Comm., 92 Oh St 363.**

Let us return to the transcript of the proceedings before the Tax Commission. Does it appear by clear and convincing evidence there that the value is not true value in money? Have the plaintiffs sustained the burden resting on them?

In reviewing the valuation made by the taxing authorities we must proceed with a consciousness of the express statutory limitation upon the judicial power, as well as the limitation imposed by the distribution of power among the three departments of government by the constitution itself.

The question is not whether there is evidence in the record to support the valuation fixed. On the contrary, it is whether or not there is affirmative evidence in the record clearly and convincingly showing that the valuation fixed does not represent the true value in money of the property. To sustain this burden resting upon them the property owners placed one witness upon the stand who, after testifying as to his experience and familiarity with the property, gave his opinion as to the value and his reasons therefor. Can it be said that the opinion of one witness,—however

respectable and experienced—establishes clearly and convincingly the valuation testified to by him? It doesn't seem so to me. The commission certainly had a right to disbelieve any witness. (**Fink v State, 40 Oh Ap 431**) (**11 Abs 526**), and particularly had a right to refuse to be bound by the opinion expressed by any witness. **Kittredge v Armstrong, 11 Ohio Dec. Rep. 661, 28 Bull. 249.** In weighing the testimony of this witness it had a right to consider the data upon which he based his opinion of value, the rea- soning process by which he reached the conclusion that the interior lots were less valuable and determine for itself whether the conclusion was justified. If in the absence of any other evidence before it is concluded that the valuation placed on the Reading road frontage, which was admittedly correct, furnished a correct standard of value for the interior lots, and that the reeasons given by the witness for differentiation were unsound, by what process of reasoning could this court say that it clearly and convincingly appeared from that same testimony alone that the valuation was not the true value in money?

But there was other evidence before the commission. In the finding of the examiner he expressly refers to the appraisal of Mr. Mulford, Mr. Costello and Mr. Liddell, upon which the valuation made by the auditor was based.

It is true that this evidence would not be competent under the strict rules of evidence applied in a judicial court. Such rules would have required the presence of the three experts. Administrative boards, however, are not bound by such rules. This subject is discussed in Stephens' Administrative Tribunals and The Rules of Evidence, published in 1933, and after reviewing the cases relating to taxation, the author summarized them at pages 50 and 51 as follows:

"Thus the cases reviewing the departure from the rules of evidence at tax assessment, abatement, and equalization hearings warrant the receipt of evidence 'which a court would not admit,' free the commission from the 'strict rules,' or from the 'rigid rules,' of evidence applied in courts, or indicate that 'to apply rigidly all the rules of evidence * * * might make * * * such hearings * * * fruitless.' The rules of evidence infringed are the hearsay rule, the rule forbidding opinions, and the rule that testimony is to be under oath. The

evidentiary materials held admissible in violation of the rules include former tax abatement returns, former judicial determinations, evidence taken secretly from presumably prejudiced witnesses, commercial ratings, investors' manuals, carriers' reports, statements of consideration in deeds and affidavits. In the cases are to be found but one expression of limitation upon the freedom of the tribunals with the rules of evidence, that there must not be arbitrary action, evidence essential to the protection of either party must be received."

For these reasons it is my opinion that the record does not contain clear and convincing evidence that the value fixed by the Tax Commission is not the true value in money of the property, and that, therefore, its findings must be affirmed, which is accordingly done.