## PAYNE-BINGHAM CO v TAX COMMISSION et

Ohio Common Pleas, Cuyahoga Co

Decided July 27, 1938

Fackler & Dye, Cleveland, for plaintiff. Frank T. Cullitan, Prosecuting Attorney, Cleveland, Saul Danaceau, Asst. Prosecuting Attorney, Cleveland, Herbert S. Duffy, Atty. General, Columbus, and Stephen M. Young, Asst. Atty. General, Cleveland, for defendants.

## OPINION

By HURD, J.

This case comes before this court for review and adjudication under the provisions of §5611-2 GC on a petition in error to the finding and determination of the Tax Commission of Ohio. It involves a complaint by the plaintiff in error, a taxpayer of this county, as to the valuation for purposes of taxation of a certain parcel of real estate located at the northeast corner of Euclid Avenue and East 21st Street in the city of Cleveland, having a frontage of 417 feet on the northerly side of Euclid Avenue, and extending through of equal width to Chester Avenue, N. E., a distance of 684 feet. The valuation of this property fixed by the county auditor as of April 12, 1931, was $1,108,750. Of this amount the sum of $3,550 was allocated to buildings leaving a valuation on the land of $1,105,200, which is the basic subject matter of this dispute creating the issue herein as set forth in the pleadings and evidence.

After the county auditor had made the valuation, a complaint was transmitted to the Board of Review which affirmed the determination of the auditor, and thereupon an appeal was taken to the Tax Commission. The Tax Commission, having affirmed the findings of the auditor and Board of Revision, and having thereby determined that the true value of the property in money was as above stated, the plaintiff in error has filed its petition in error praying that said determination of the Tax Commission be vacated, reversed or modified. For the sake of brevity and convenience we shall hereafter refer to the respective parties as plaintiff and defendants or by their official titles.

The plaintiff alleges six grounds of error, as follows:

"(1). That the determination of the value of said property is not the true value in money of such property on said date.

"(2) That in determining for assessment the value of said property The Tax Commission of Ohio greatly over-valued said property and such over-valuation constitutes an arbitrary taxation of plaintiff in error's property in violation of law.

"(3) That the true value in money of said property did not exceed on April 12, 1931, the sum of six hundred thousand dollars ($600,000.00).

"(4) That the finding and order of defendant in error the Tax Commission of Ohio violates the Fourteenth Amendment to the Constitution of the United States in that it deprives plaintiff in error of its property without due process of law and denies to plaintiff in error the equal protection of the law.

"(5) That the finding and order of defendant in error the Tax Commission of Ohio violates §§1 and 2 of Article 1 of the Constitution of the State of Ohio in that it denies to plaintiff in error the right of acquiring, possessing and protecting property, and denies to plaintiff in error the equal protection and benefit of government.

"(6) That the finding and order of defendant in error The Tax Commission of Ohio violates §2 of Article XII of the Constitution of the State of Ohio in that it fixes the value of said property of plaintiff in error at other than its true value in money and does not fix the same by uniform rule according to value."

This court has had before it for review the record of proceedings heretofore had and a transcript of the evidence before the Tax Commission, and has in addition thereto had before it additional evidence consisting in part of the voluminous documentary data and the testimony of expert witnesses as to the valuation of the property in question as of April 12, 1931. As frequently happens, in cases where a number of expert witnesses are called by opposing parties, the values stated are of an extremely divergent character. The divergence of opinion as to the value of the property in question as disclosed by the

testimony is so marked as to justify a brief statement thereof herein as follows:

Maximum appraisals of three of plaintiff's witnesses were as follows:

| | |
|---|---|
| Mr. W. E. Malm, | $323,000 |
| Mr. E. L. Ostendorf, | 460,000 |
| Mr. Joseph Laronge. | 600,000 |

The maximum appraisals of three defendants' witnesses were as follows:

| | |
|---|---|
| Mr. E. H. McIntosh | $1,250,000 |
| Mr. Max J. Rudolph | 1,288,000 |
| Mr. W. J. Van Aken | 1,406,202 |

All of these witnesses are well known as capable experienced realtors of the city of Cleveland, of unquestioned integrity and probity, enjoying a high standing in their profession. A review and analysis of all of the expert testimony presented, much of it being of a highly technical nature based on development studies of projected improvements would unduly lengthen this opinion. In the interest of brevity, therefore, we believe it to be advisable to refer to only so much of the evidence as is necessary for an understanding of the decision and opinion.

It appears from the evidence that at the time the valuation complained of was made by the county auditor, that said officer was engaged in making a country-wide appraisal of real property commonly called a sexennial appraisal. In order to have the benefit of expert opinion in fixing a valuation, the auditor employed the Cleveland Real Estate Board to assist in the work of revaluation, and it appears that the valuation committee of the Cleveland Real Estate Board, augmented by various members of the board, proceeded to make a valuation of real property in the county, including an appraisal of the land described in the petition.

A plat of a section of Euclid Avenue, including the land in question, and certain letters signed by members of the valuation committee of the Cleveland Real Estate Board, concerning the same were admitted in evidence in this case and reference is made thereto as follows:

Dated November 14th, 1930, and addressed to John A. Zangerle, county auditor:

"Dear Mr. Zangerle:
"In the course of determining the unit valuation on Euclid Avenue we called a number of our members in consultation who are familiar with Euclid Avenue down-town valuation among them being Mr. A. S. Taylor, Mr. Joseph Laronge, Mr. E. H. McIntosh, Mr. H. H. Hampton, Mr. W. J. Crawford, Jr., Mr. W. A. Greenlund, Mr. R. T. Cragin and Mr. C. A. Palmer, members of the valuation committee. Their judgment was considered in arriving at the unit values on the attached map. The figures shown represent the true value in money of land one foot front by 100 feet deep."
Signed by:

> "E. L. Austendorf,
> J. J. Haas,
> Max J. Rudolph,
> R. B. Dennis,
> Wm. J. Van Aken,
> Wm. Ambler,
> E. G. Gilbert,
> C. J. Houle,
> V. C. Taylor.
> Members of the Valuation Committee."

Another such letter, dated November 24, 1930, from the Cleveland Real Estate Board, addressed to John A. Zangerle, county auditor, is as follows:

"Dear Mr. Zangerle:
"The valuation committee of the Real Estate Board, augmented by members as referred to in our letter dated November 14, 1930, have passed on some additional figures in land valuation and desire to submit the attached."
Signed by

> E. L. Austendorf,
> Chairman of the Valuation Committee."

According to the testimony and the unit figures appearing on the plat attached to the letter, the cumulative judgment of all the members of the valuation committee was that the land in question was of the value of $1,800, a unit foot on Euclid Avenue by 100 feet deep, and $500 per foot front on East 21st Street (see defendant's exhibit A-1, A-2 and A-3).

It appears further from the evidence that after receiving these appraisals on the basis of unit values of the property in question, the county auditor made a substantial reduction in the valuation as placed upon this and other property by the valuation committee of the Cleveland Real Estate Board in fixing his valuation of the property in question for tax purposes for the year 1931.

The plaintiff introduced in addition to the testimony of experts as to valuation,

considerable evidence concerning cancellations, adjustments and re-adjustments of long term leases, showing or tending to show a reduction in rentals of Euclid Avenue frontage adjacent to the land in question prior to the year 1931.

Evidence was also introduced showing or tending to show an era of speculation in leases and in leasehold interests during the period prior to 1931. According to the record before the Tax Commission the assessed values for the land in question for the years 1924 and 1930 were as follows:

| Year | Assessed Value of Land |
|------|------------------------|
| 1924 | $2,514,480 |
| 1930 | 1,256,920 |

The question presented for the determination of the court on the trial of this case as we view it is in substance as follows: Is there clear and convincing evidence that the Tax Commission erred in its determination of the true value in money of this property, and if so, what was the true value in money of this property as of April 12, 1931.

In arriving at a conclusion we conceive it to be the duty of the court to review the entire record made before the Tax Commission, to consider all the additional evidence admitted upon the trial of this cause, and thereupon to exercise an independent judgment upon all the issues both of law and fact determined by the commission. Floyd, County Auditor v Mfgrs. Light & Heat Co., 111 Oh St 57, 144 NE 703; Stanton, Prosecuting Attorney, etc. v Tax Commission, 114 Oh St 658; Stanton, Prosecutor, etc. v Realty Co., 117 Oh St 345; Oil Company v Zangerle, 133 Oh St 33, 9 O.O. 502, 11 NE (2d) 242.

The duty and authority of the court in this respect is qualified by the provisions of §5611-2 GC, as follows:

"No determination of the Tax Commission as to the value of property for taxation shall be reversed, vacated or modified unless it is shown by clear and convincing evidence that the value of the property, as determined by the Tax Commission, is not the true value in money of such property."

This provision is contained in §5611-2 GC as amended January 1, 1936, and was also contained in said section §5611-2 GC prior to said amendment. Article 12, §2 of the Constitution of Ohio provides in part: "Laws shall be passed taxing by a uni-

form rule * * * real and personal property according to its true value in money."

Sec 5560, GC, provides in part: "Each separate parcel of real property shall be valued at its true value in money * * * the price for which such real property would sell at auction or at forced sale shall not be taken as a criterion of the true value."

That the county auditor may employ expert help in assisting him in arriving at and in fixing the true value in money of property cannot be questioned, as §5548 GC provides in part as follows:

"The county auditor upon the approval of the Tax Commission of Ohio is empowered to appoint and employ such experts, deputies and clerks or other employees as he may deem necessary to the performance of such duties as such assessor * * * such experts, deputies, clerks and other employees * * * shall perform such service as the county auditor may direct in ascertaining such facts, description, location, character, dimensions of buildings and improvements, and such other circumstances reflecting upon the value of such real estate as will aid the county auditor in fixing its true value in money. Said county auditor may also if he deem it necessary or advisable, summon and examine any person under oath in respect to any matter pertaining to any real property within the county."

If we were to consider the history of this and other properties similarly situated since the date of the assessment, we should encounter serious difficulties and many perplexing problems in arriving at a correct conclusion in this case. This is evidenced by the testimony of one of the expert witnesses who testified for the defendants. In answer to a question this witness stated:

"If I had to sit down today and make an appraisal as of April 12, 1931, I probably would make the same figure that I have given to you. ($1,406,292) because that was the knowledge that I had of values at that time, I would not say whether I was right or not—now I would say wrong, I imagine.

"Q. You would say you were wrong?

"A. I would say wrong now, knowing what I know about what happened to these properties in that time."

In answer to another question the same expert witness replied:

"From the light of events that happened since then we know that speculation is all out of the real estate market and all out of Euclid Avenue, and I, like you, know that we are wrong. You bought property at that time and you know that you paid too much for it. And I know that value to that property is too much as we set it up there, now, but I would not be able to change that opinion from that if I put myself back to then.

"Q. I am asking you, Mr. Van Aken, you know now that that opinion that was given by the Real Estate Board in 1930 was very greatly in excess of the value of that property, don't you?

A. **In the light of happenings since then, yes."** (Emphasis ours).

In other words the witness freely admits that in the light of later experience he would say now that the values as of that date were too high. However, ▄▄▄▄▄▄▄ ▄ we conceive it to be the rule that the court may not consider testimony of experiences since 1931, in arriving at a conclusion as to the value of the property as of that date. We conceive it to be the duty of the court to exclude from consideration all evidential matters post dating the time of the assessment made herein. To do otherwise would we believe result in chaos insofar as the proper functioning of our governmental taxing machinery is concerned. The taxing authorities, under the power given them by the state are required to exercise their authority justly and with the utmost good faith. They have only such powers as the constitution and the statutes enacted thereunder give them. Being human they cannot be expected to possess the powers of prophesy. They are obliged to work with human instruments and to acquire their information in all cases from the best sources of information obtainable at the time. If we were to consider evidence and experiences occurring after the time of the valuation by the county auditor according to law, we would be guided by evidence not available to the taxing authorities at the time the valuations were made. Clearly it is not the intention of the Legislature, nor was it the intention of the framers of the Constitution that the courts should determine values in the light of later events. As has been stated in a recent case: **Linch v Heuck, Auditor et, 11 O.O. 402,** Court of Appeals of Hamilton County; motion to certify overruled, June 1, 1938.

"Taxation is a function of the legislative branch of the sovereign power of the state. State ex v **City of Toledo, 48 Oh St 112, 131 132.** It is a non-judicial function. Reese v City of Watertown, 19 Wall., 107; Yost v Dalas, County 236 U. S. 50; Heine v Levee Comr; 19 Wall., 655; Thompson v Allen County et, 115 U. S. 550. ((Emphasis ours).

Again quoting from the same case:

"Only when the exercise of power by the Legislature of those units to which it may have delegated its power amounts to arbitrary abuse of power, to confiscation, to the taking of property without compensation, may the judicial branch of government justify its interference with the free exercise of the taxing power of the legislative or administrative offices or to its functioning under a lawful delegation of authority." Citing Spencer v Merchant, 125 U. S. 345; French v Barber Asphalt Paving Co., 181 U. S. 324; Interstate Commerce Commission v Illinois Central R. R. Co., 215 U. S. 452; Illinois Central Railroad Co. v Gulf & South Shore R. R. Co., 206 U. S. 441; State v Great Northern Railway Co., 130 Minn. 57; Lake Iron Company v Wakefield, 247 U. S. 350; **Providence Savings Bank & Trust Co. v Tax Commission, 10 O.O. 469.**

At this point we deem it proper to observe that we are not in full agreement with some of the reasoning of the Court of Appeals of Hamilton County as expressed in this case, particularly when the court say:

"The real essential question before the court is has there been an abuse of discretion by the Tax Commission resulting in what amounts to confiscation of the property of the taxpayer under the guise of taxation?" Citing **Stanton, etc. v Tax Commission et, 114 Oh St 658-682.**

We believe the rule laid down in this case was somewhat modified by the Supreme Court in the later case of **Stanton, etc. v Tax Commission of Ohio, 117 Oh St 345,** wherein the Supreme Court made the statement that it was the duty of the court "to consider the entire record made before the Tax Commission, to consider all the additional evidence admitted upon the trial of the cause, and thereupon to exercise an independent judgment upon all

the issues, both of law and fact, determined by the Commission."

Reverting again to the evidence, it appears that there existed for a considerable time prior to 1931 a speculative boom in Euclid Avenue frontage, particularly with respect to leases and leasehold interests, one of the experts referring to this Euclid Avenue frontage as the "Gold Coast" of Cleveland. All the experts seem to agree that the boom so-called thereafter "flattened out" that there has since been a marked depression in Euclid Avenue values. It appears to us as heretofore stated that in consideration of the evidence we may not be influenced by evidence of events occurring after tax day of 1931; that our conclusion as to values must be based wholly and solely on the evidence as applied to values as of April of 1931 and prior thereto.

Now, upon a consideration of all the evidence and guided by the rules of law hereinbefore set forth which we believe to be applicable, what must be our conclusion in this case?

As hereinbefore stated, the testimony proffered upon this hearing is widely divergent in character. The testimony of the defendants' experts, amply supporting the finding of the Tax Commission, and the testimony of the plaintiff's witnesses amply supporting the contention of the plaintiff. The testimony of the plaintiff concerning the adjustments and cancellations of leases, as to traffic counts, as to stock market fluctuations and declines is very interesting and instructive as reflecting economic conditions in 1931 and prior thereto. This evidence is very persuasive but none of it in and of itself is conclusive of the question involved herein. This evidence presents factors proper for consideration, but not any one factor standing alone can be accepted as the determining factor in reaching a solution of the problem before us Having in mind the proposition hereinbefore stated, in attempting to ascertain the true value in money of the property in question, we should confine our considerations to evidence reflecting conditions and values as they existed in the year 1931, we might very well propose this test—if we could successfully orient ourselves to the period of the year 1931, and if we were then called upon to secure a sound, expert appraisal of the true value in money of this Cleveland property, to whom would we go? Would we not go to the members of the valuation committee of the Cleveland Real Estate Board, or persons similarly qualified? Would we not like to have that committee augmented by experts on Euclid Avenue property? We believe so.

Now, that is precisely what the county auditor did when he proceeded to make his appraisal. Having before him the opinion of these experts for tax purposes, he depreciated the values an appreciable amount below the values fixed by these experts at that time. These experts were not under any urge of any kind which would tend perhaps unconsciously to color their testimony in favor of one side or the other to this controversy. Their conclusions at that time represented their best judgment on the evidence before them. It might be noted that the valuation committee of the Cleveland Real Estate Board not being entirely satisfied to depend solely upon their own judgment called in, as they say, "a number of our members who are familiar with Euclid Avenue and down-town values * * *. Their judgment was considered in arriving at unit values on the attached map." (See Defendant's "Exhibit A-2, and A-3.")

We are convinced from all the evidence that there was no irregularity in the proceedings, that the county auditor, acting in good faith made full use of the powers granted him by the statute in good faith as an assessor of the real estate in the county in securing or attempting to secure from the best sources of information within his reach, as nearly as practicable, and true value in money of the property in question; that insofar as it is humanly possible to determine such a question, the valuation as fixed by the county auditor, affirmed by the board of Revision and in turn affirmed by the Tax Commission, is the true value in money of said property as of April 1931.

Our final conclusion therefore is that we have not been presented with clear and convincing evidence warranting a conclusion that the judgment of the Tax Commission should be reversed and the finding of the Tax Commission therefore will be affirmed.