WILLOUGHBY TERMINALS CO., APPELLANT, *v.* MUMMEY, AUD., ET AL., APPELLEES.
MOORE, ET AL., APPELLANTS, *v.* MUMMEY, AUD., ET AL., APPELLEES.

(No. 41682—Decided October 30, 1965.)

*Mr. George Roudebush*, for plaintiffs.
*Mr. Fred V. Skok*, prosecuting attorney, for Board of Revisions for Lake County.

SIMMONS, J. These cases were consolidated for hearing and disposition on an appeal from the decision of the Board of Revision pursuant to Section 5717.05, Revised Code. The appeals arise from two complaints, designated by the Board as Complaint Nos. 39 and 40. Complaint No. 39 relates to property owned by the Willoughby Terminals Company. Complaint No. 40 relates to property owned by Nellie C. Moore. The latter fee interest is subject to a permanent lease to the Willoughby Terminals Company. The presence of this lease justified a consolidation of the cases since it appears that, for tax evaluation purposes at least, the Willoughby Terminals Company is the owner of all property in question. *Park Investment Co.* v. *Bd. of Revision*, 115 Ohio App. 523.

The appellant offered testimony of a well qualified appraiser, one Joseph E. Wurstner, who testified concerning his opinion as to the true value of the property in question, supported by data compiled in written form and admitted into evidence as Appellant's Exhibit "F." This testimony was logical, complete and pursuasive. Moreover, it remains unrebutted by any evidence submitted by the appellees.

In choosing not to offer evidence as to value the appellees were apparently motivated by two beliefs:

1. That the auditor's appraisal (last made in January of 1959) carries with it a presumption of validity and must stand unchallenged unless confronted by contradictory evidence which is clear and convincing;

2. That no evidence subsequent to the date of the last appraisal by the County Auditor may be considered.

This court cannot agree with either of these positions. The first is based upon the cited case of *Payne-Bingham Co.* v. *Tax Commr.*, 27 Ohio Law Abs. 283. An examination of this case discloses that it was decided in 1938 and applied Section 5611-2, General Code (now Section 5717.04, Revised Code). In 1938 this section expressly required clear and convincing evidence to defeat the auditor's appraisal. Later amendments to that section removed this requirement and it was not present in 1953 upon the adoption of the Revised Code of Ohio. It is clear, therefore, that this contention is based upon a false premise.

The appellees cite no authority to support their second proposition. In none of the statutory provisions applicable to

appeals from decisions of the Board of Revision, nor in any case applying these or analogous provisions does this prohibition appear. On the contrary, Sections 5715.19, 5717.03 and 5717.05, Revised Code, require a determination of the true value in money of the property in question and it is perfectly clear that that determination must be based on those factors in existence which bear upon true value as of the year of the complaint. This is true whether it be the year of appraisal, two years following or six years following. To hold otherwise would be to freeze all property values throughout the country for the entire interval between county appraisals, ignoring any and all cataclysms affecting individual values. It would result in forcing the owner of a fire-gutted building to pay a tax based upon conditions prevailing before the fire. The other extreme would authorize a continuation of a tax on unimproved land when in fact a building has been erected upon it.

The records of the Board of Revision show that following the complaint, by action taken July 7, 1964, the board voted to reduce these valuations of buildings a total of over $16,000.00. The board must have considered some evidence apart from its 1959 appraisals to have justified the reductions. That evidence, whatever it was, must relate to conditions after 1959. So it would seem that the board does not seriously entertain the second proposition it now espouses.

This court is obliged to determine the true value in money of the property in question as of 1963. This is a de novo determination which must be founded on evidence submitted at the hearing before the board or the subsequent hearing before this court. *City of Cleveland* v. *Cuyahoga County Bd. of Revision*, 96 Ohio App. 483.

Considering the state of the evidence from these sources it is the judgment of this court, treating the parcels as one, that the true value of the land is $173,600.00 and the true value of the buildings is $173,999.00. The true value in aggregate is $347,-599.00.

This opinion adopts the opinion of the expert witness as to land value and, with two exceptions, adopts his opinion as to building values. The witness approaches the building values on the basis of the reconstruction cost new, less depreciation, modified by application of the economic value approach, a pro-

cedure endorsed in the case of *American Steel & Wire Co.* v. *Bd. of Revision*, 139 Ohio St. 388. The total of the depreciated values of the buildings is $259,700.00. The economic value approach leads the witness to conclude that this "physical" value total is subject to a factor of 60 per cent representing economic obsolescence. This is a factor which the witness describes as representing the ratio of actual experienced net income to standard percentage returns expected by investors for property of this type. By taking an average income and operating expense figure ($19,500.00) and applying to it two arbitrary percentage returns, 6 per cent attributable to land and 9 per cent (7 per cent return and 2 per cent depreciation attributable to buildings) the witness arrives at an economic value of the buildings of $100,933.00. The ratio of this figure to the total depreciated building value is roughly 40 per cent, a finding of 60 per cent economic obsolesence in these buildings. 40 per cent of the depreciated present value of $259,700.00 is $104,000.00, rounded off. This figure represents the witness's opinion as to the value of the buildings.

It may be noted that this procedure is somewhat akin to a tail wagging the dog. The witness's first procedure is to determine the reconstruction cost new, less depreciation. He then throws that figure out the window by determining that the economic approach is the more accurate measure.

While questioning the seeming illogic of this procedure the court is in no position to declare it improper, particularly in view of the acknowledged reputation for ability and integrity which the witness justly claims.

However, it may be noted that the economic approach is markedly affected by any changes in the figure representing net income as well as the arbitrary percentage figures. The operating expenses total of $29,520.00 used by the witness includes an item of real estate taxes totaling $16,100.00. If this item is reduced the net income will be greatly increased, increasing the amount of return attributable to buildings and, thus, increasing the capitalized value of the buildings themselves. If there is a reduction in the value of this propety for tax purposes an increase in capitalized value will be effected. There appears no good reason to this court why the appellant should have his cake and eat it too; i. e., why he should use the full before ap-

peal tax liability as proof of his need for adjustment when the effect of that adjustment will be a pro tanto elimination of its need.

Assuming a reduction of 30 per cent in the valuation for tax purposes (a conservative assumption), the tax liability would be $11,270.00 and the net income before depreciation and capital return will be $24,330.00. With a net income attributable to land of $10,416.00 (6 per cent of $173,600.00) a net income attributable to the buildings of $13,914.00 results. Capitalizing this amount at 8 per cent (6 per cent return and 2 per cent depreciation) shows a capitalized value of $173,925.00. This represents an economic obsolescence of 33 per cent rather than 60 per cent as claimed by the witness, a more realistic figure.

The court will accept the contention of the witness that the economic value approach is more valid in regard to this property. The evidence that the net income realized by the owners in 1959 was $20,430.00 while in 1963 it dropped to $7,687.00 is persuasive of this contention.

The court is of the opinion, as has been stated, that a factor of 67 per cent rather than 40 per cent should be applied to the reconstruction cost less depreciation total of $259,700.00. This results in a true value of $173,999.00 assignable to the buildings and a total value of $347,599.00 for the property as a whole.

The clerk of this court is instructed to certify a copy of this order to the Auditor of Lake County who shall correct the tax list and duplicate in accordance herewith. Costs assessed against the appellees, who are given their exceptions.

*Judgment accordingly.*