CITY OF CLEVELAND, APPELLANT, *v.* CUYAHOGA COUNTY BOARD OF REVISION, APPELLEE.

**484**

(No. 22847—Decided November 23, 1953.)

*Mr. Joseph H. Crowley,* director of law, and *Mr. R. O. Horn,* for appellant.

*Mr. Frank T. Cullitan,* prosecuting attorney, and *Mr. F. W. Frey,* for appellee.

KOVACHY, J.   The Supreme Court of Ohio, in the case of *City of Cleveland* v. *Board of Tax Appeals,* 153 Ohio St., 97, 91 N. E. (2d), 480, 16 A. L. R. (2d), 1354, ruled that the Cleveland Municipal Stadium and contiguous vacant land devoted to automobile parking was used to carry on a private or proprietary function in competition with others engaged privately in similar enterprises and, consequently, was not exempt from taxation.

In the case before us, we are concerned with the value for purposes of taxation of the land upon which the stadium rests and four adjoining parking lots for the years 1948, 1949, and 1950.

The Auditor of Cuyahoga County assessed the value of this land on the basis of $1.25 per square foot at $1,580,550.   The Board of Revision, on appeal, assessed it at one dollar per square foot for a total valuation of $1,264,440.   Upon appeal by the city of Cleveland to the Common Pleas Court of Cuyahoga County, pursuant to Section 5717.05, Revised Code (Section 5611-4, General Code), the true value in money of the land was again put at $1,264,440 for the years 1948, 1949, and 1950.   The instant case is an appeal on ques-

tions of law from an order of the Common Pleas Court, which, in effect, affirmed the decision of the Board of Revision and ordered the dismissal of the appeal of the city of Cleveland.

The case in Common Pleas Court was tried on the transcript of the minutes of the hearing before the Board of Revision, which included many maps and an affidavit setting forth the assessed valuation of the land and buildings; a description of the stadium building itself; the use of the stadium land and adjoining land; the Cleveland stadium operating statement for the years 1947 to 1950, inclusive; the gross receipts for the parking lot areas and the expenses covering the taxes and wages of the two attendants; the amount spent by the city of Cleveland in 1950 for grading and surfacing parking lot No. 1; and the balance sheet of the stadium property. The court, in addition, permitted evidence to be admitted on behalf of the city of Cleveland which showed that there is plenty of land elsewhere along the lake shore for dock facilities (the Cleveland Municipal Stadium and parking lots are located on the shore of Lake Erie between West 3rd Street and East 9th Street); that the property in the West Basin (west of the Cuyahoga River to 58th Street) is valued at 55 cents a square foot; east of the Cuyahoga River to West 9th Street, one dollar per square foot; West 9th to West 3rd Streets, one dollar per square foot; east of East 9th Street south of the shoreway between East 9th and East 12th Streets, $1.25 per square foot; and that from East 12th to East 55th Streets the land values range from one dollar to 25 cents per square foot.

Mr. George D. McGwinn, a real estate broker and appraiser, placed the valuation of the property in question at 50 cents per square foot. He testified also that depreciation and maintenance deductions from gross earnings left approximately $30,000 per year

net earnings before taxes as to the stadium; that parking lots Nos. 1 and 2, after expenses and before taxes, showed an average net earning of $37,345 for the three years; that lots Nos. 3 and 4 averaged net earnings of $4,750; that on a one dollar per square foot valuation on all the land in question there would be an average loss of $20,901 per year; and that on a 50 cents per square foot valuation, a net loss of $343 per year would result.

The claim of the city is that the land was worth 50 cents per square foot for the years 1948, 1949, and 1950. Plaintiff, appellant herein, sets forth six assignments of error which can be summarized as follows:

1. The court erred in not evaluating the factors in the record properly in its consideration of the value of the property, to wit, in not considering income and in believing the amount that a willing buyer and a willing seller would agree on, where neither is under compulsion, is the sole test or the controlling factor in such determination.

2. The court erred in not undertaking to "ascertain and determine the true value in money of the property" from the evidence before it, instead of determining that "no credible evidence was introduced in this case that would warrant this court in reversing the finding herein."

The trial judge made a finding in writing which was spread upon the record. In it he set down the salient facts found by him and the law applied by him to such facts, the finding being a part of the record, which brings it before us for review on this appeal.

In *Harner* v. *Batdorf,* 35 Ohio St., 113, paragraph one of the syllabus is:

"A judgment rendered on a special finding of facts made by the court may be reviewed on error, although such finding was not made at the request of either party."

The trial court, in its finding, held that the income realized from this property plays no part in the determination of its value for tax purposes and that value "is the amount that a willing buyer and a willing seller would agree on where neither is under compulsion such as a judicial sale, for instance." This we believe to be an erroneous statement of the law in a matter concerned with the assessment of property for taxation purposes.

It must ever be borne in mind that the determination of the true value in money of property for the purpose of raising tax revenue has as its base a fair apportionment of the cost of government from property to property. Equality of assessments of private property similarly situated is the paramount issue and is more important than the proper determination of market value. Eminent Domain by Jahr.

To apply that philosophy to the property here in question, in the determination of its true value in money for taxation purposes, the same measurements and methods usually utilized to assess property in the hands of a private citizen must be pursued. The lone goal is to arrive at a figure that is based upon factors customarily used in the case of private property in the same locality and similarly situated. All elements bearing on the question must be considered. No single factor is controlling. Incidents of location, size, nature and general desirability of the land for useful purposes, the price which the property would bring in an open market on a free, not forced, sale between a willing buyer and a willing seller, improvements upon it, their usefulness and income, character of surrounding land and value placed upon it, possibilities of future development and maximum future earnings should all be considered to arrive at the true value in money for taxation purposes of private property.

51 American Jurisprudence, 653, Section 701, provides:

"Generally, the chief element of value of a parcel of land on one of the principal streets of a city is its capacity for profitable use as a location of a building for business purposes."

*South Utah Mines & Smelters* v. *Beaver County*, 262 U. S., 325, 330, 67 L. Ed., 1004, 43 S. Ct., 577, states:

"The value of property bears a relation to the income which it affords."

*Central Maine Power Co.* v. *Inhabitants of the Town of Turner*, 128 Maine, 486, 148 A., 799, holds:

"In estimating the value of land for the purposes of taxation all of its incidents should be considered and the elements of value which lead to its most profitable improvements fix the proper valuation of the land."

In *B. F. Keith Columbus Co.* v. *Board of Revision of Franklin County*, 148 Ohio St., 253, 74 N. E. (2d), 359, paragraph one of syllabus is:

"In determining the value of property for the purpose of taxation, the assessing body must take into consideration all factors which affect the value of the property."

The property here is dedicated to a public use which makes its sale in the foreseeable future highly improbable. There cannot, therefore, be a willing seller. A market value, realistically speaking, therefore does not exist. However, to conform to the requirements of Section 2, Article XII of the Constitution of Ohio that "land and improvements thereon shall be taxed by uniform rule according to value," this public land must be viewed as though it were privately owned and used for private profit, subject to the usual vicissitudes and uncertainties as well as hopes inherent in a business of like tenor and similar location. This follows as a necessary corollary to the ruling of the Supreme

Court in the case of *City of Cleveland* v. *Board of Tax Appeals, supra.* Only by so doing will it carry its share of the burden of taxation on an equal basis with private industry.

The court in its finding states, *inter alia,* "It is my opinion that no credible evidence was introduced in this case that would warrant this court in reversing the finding therein."

The provisions of Section 5717.05, Revised Code (Section 5611-4, General Code), pertinent to this case, read:

"As an alternative to the appeal provided for in Section 5717.01 of the Revised Code, an appeal from the decision of a county board of revision may be taken directly to the Court of Common Pleas of the county by the person in whose name the property is listed or sought to be listed for taxation. * * *

"* * *

"* * * said board shall certify to the court a transcript of the record of the proceedings of the said board pertaining to the original complaint and all evidence offered in connection therewith.

"The court may hear the appeal on the record and the evidence thus submitted, or it may hear and consider evidence in addition thereto. It shall determine the true value in money of the property whose valuation or assessment for taxation by the county board of revision is complained of * * *."

Under the plain language of this section, the Legislature clearly intended that the Common Pleas Court hear the entire matter anew on the evidence presented before the Board of Revision, and whatever additional evidence it may see fit to allow and that it then, by the exercise of *independent judgment,* "determine the true value in money of the property."

In our opinion, the trial court in this case was called

upon to try the entire matter *de novo*, by weighing and evaluating all the evidence before it and arriving at its own valuation of the property based upon the evidence before it, rather than to be concerned with the question of whether evidence of a credible nature was introduced to warrant a reversal of the ruling of the Board of Revision, and by so doing committed error highly prejudicial to the substantial rights of the plaintiff. This must be so for the reason that Section 5717.01, Revised Code (Section 5610, General Code), dealing with a parallel and alternative appeal from the Board of Revision to the Board of Tax Appeals, uses the identical language with reference to the matter to be determined by said board, and the Supreme Court of Ohio in interpreting the language so used, in the case of *Clark* v. *Glander, Tax Commr.*, 151 Ohio St., 229, 85 N. E. (2d), 291, paragraph one of the syllabus, said:

"In an appeal from an assessment based on an alleged erroneous valuation of intangible personal property by the Tax Commissioner, the Board of Tax Appeals is required to consider the entire evidence anew and arrive at its own valuation based on the evidence before it."

We hold, therefore, that the court below erred in not considering all relevant factors bearing on the question of value before it and in failing to make its own determination of the "true value in money of the property whose valuation or assessment for taxation by the county board of revision is complained of."

The judgment of the Common Pleas Court, accordingly, is reversed, and the cause is remanded for further proceedings according to law and in accordance with this opinion.

*Judgment reversed.*

HURD, P. J., and SKEEL, J., concur.