BLACK ET AL., TRUSTEES, APPELLEES AND CROSS-APPELLANTS, *v.* BOARD OF REVISION OF CUYAHOGA COUNTY ET AL.; CLEVELAND BOARD OF EDUCATION, APPELLANT AND CROSS-APPELLEE.

[Cite as Black *v.* Bd. of Revision  (1985), 16 Ohio St. 3d 11.]

(No. 84-236—Decided March 27, 1985.)

12

*Messrs. Arter & Hadden, Mr. Curtiss L. Isler* and *Mr. Jacob I. Rosenbaum,* for appellees and cross-appellants.

*Messrs. Armstrong, Gordon & Mitchell, Mr. Timothy J. Armstrong* and *Mr. William Mitchell,* for appellant and cross-appellee.

WRIGHT, J. The issues presented by this appeal are whether the common pleas court abused its discretion in refusing to conduct a trial *de novo* or erred in its valuation of UCB's property and whether a discriminatory level of assessment was applied. We hold that the court of common pleas did not abuse its discretion in disallowing a trial *de novo.* We further hold that the court's method of valuation and application of a uniform rate of assessment were proper.

R.C. 5717.05 defines the parameters of an appeal from the board of revision to the court of common pleas, and states, in pertinent part, that:

"* * * [A]n appeal from the decision of a county board of revision may be taken directly to the court of common pleas * * *.

"* * *

"Within thirty days after notice of appeal to the court has been filed with the county board of revision said board shall certify to the court a transcript of the record of the proceedings of said board pertaining to the original complaint and all evidence offered in connection therewith.

"The court *may* hear the appeal on the record and the evidence thus submitted, or it *may* hear and consider evidence in addition thereto. It shall determine the taxable value of the property whose valuation or assessment for taxation by the county board of revision is complained of, or in the event the complaint and appeal is against a discriminatory valuation, shall determine a valuation which shall correct such discrimination, and the court shall determine the liability of the property for assessment for taxation, if that question is in issue, and shall certify its judgment to the auditor, who shall correct the tax list and duplicate as required by such judgment." (Emphasis added.)

UCB argues that although the terms of the statute expressly state that the common pleas court *may* hear and consider evidence in addition to the record on appeal, the statute nevertheless is mandatory and requires a full evidentiary hearing or trial *de novo.* UCB cites two cases, *Cleveland* v. *Bd. of Revision* (1953), 96 Ohio App. 483 [55 O.O. 55], and *Zeisloft* v. *Bd. of Revision* (1972), 32 Ohio St. 2d 180 [61 O.O.2d 419], in support of this proposition.

Our reading of these cases differs from that presently urged by UCB and will clarify any confusion arising from those cases which construe R.C. 5717.05. The requirements of R.C. 5717.05, as interpreted by *Cleveland, supra,* establish that the common pleas court has a duty on appeal to independently weigh and evaluate all evidence properly before it. The court is then required to make an independent determination concerning the valuation of the property at issue. The court's review of the evidence should be thorough and comprehensive, and should ensure that its final

determination is more than a mere rubber stamping of the board of revision's determination. The *Cleveland* case does not, however, require a trial *de novo*.

UCB quotes *Zeisloft, supra,* for the proposition that R.C. 5717.05 "contemplates more than an appeal. * * * The statute contemplates a trial of the issues of valuation leading to a *judgment* by the court, * * *." (Emphasis *sic.*) *Zeisloft* at 183. This statement is accurate as R.C. 5717.05 requires more than a mere appeal because the court must consider anew all of the evidence and may, in its discretion, admit additional evidence. Based on its evaluation of this evidence, the court must make an independent judgment regarding the taxable value of the property. However, *Zeisloft* does not mandate a full-blown trial *de novo*.

UCB further contends that this court has carved out an exception to the normal statutory interpretation of the word "may" which requires that "may" be read as "must" in all cases of great public interest, or in cases where a matter of public policy and not merely a private right is involved. According to UCB, R.C. 5717.05 must be given such an interpretation, mandating a trial *de novo*. UCB cites two cases in support of this contention, *Stanton* v. *Frankel Bros. Realty Co.* (1927), 117 Ohio St. 345, and *Pennsylvania RR. Co.* v. *Porterfield* (1971), 25 Ohio St. 2d 223 [54 O.O.2d 357]. *Stanton* was concerned with an interpretation of G.C. 5611-2, regarding review of the Tax Commissioner's evaluations, which limited the trial court's review of that agency's ruling to a clear and convincing standard. *Pennsylvania* concerned the valuation of a railroad which had "taxable property in 56 of the 88 counties of this state." We need not distinguish these cases further, however, except to say that the valuation of a privately owned office building does not fall within the purview of the term "great public interest" or is a "matter of public policy."

While R.C. 5717.05 requires more than a mere review of the decisions of the board of revision, that review may be properly limited to a comprehensive consideration of existing evidence and, in the court's discretion, to an examination of additional evidence. The court should consider all such evidence and determine the taxable value through its independent judgment. In effect, R.C. 5717.05 contemplates a *decision de novo*. It does not, however, provide for an original action or trial *de novo*. *Selig* v. *Bd. of Revision* (1967), 12 Ohio App. 2d 157, 165 [41 O.O.2d 232].

The independent judgment of the trial court should not be disturbed absent a showing of abuse of discretion. Specifically, an appeals court should not question the trial court's judgment, unless such determination is unreasonable, arbitrary, or unconscionable. *Jennings & Churella Constr. Co.* v. *Lindley* (1984), 10 Ohio St. 3d 67, 70; *Clark* v. *Rockwood & Co.* (App. 1960), 88 Ohio Law Abs. 429 [18 O.O.2d 414].

We are of the opinion that the determinations of the court of common pleas were not unreasonable, arbitrary, or unconscionable.

Initially, the court of appeals properly construed R.C. 5715.19 to pro-

vide that not only a school board, but "any taxpayer," may file a complaint regarding his own or another's real property. Contrary to UCB's allegations, the delegation to the board of education's attorney of the power to file the complaint on behalf of the board was lawful.

Next, we are not convinced that the common pleas court misled the parties into believing that a trial *de novo* definitely would be granted. Even if the actions of the court may have created such an expectation, we do not believe that the established procedural guidelines prejudiced the parties concerning the presentation of proof.

Furthermore, the record does not establish that the court misunderstood the submitted evidence or erroneously determined the valuation of the property in question. The evidence before us shows that the court maintained an adequate administrative record. This record consisted of two complete narrative appraisal reports, financial statements, lease information, and a verbatim transcript. Admitted by stipulation were two additional appraisal reports and a supplemental report of the school board. In addition to these materials, the trial judge conducted numerous pretrial conferences and received extensive briefs and oral arguments from the parties. At each conference, the judge invited both parties to supplement the record with any necessary, additional evidence. The trial court repeatedly urged UCB to submit videotape recordings, deposition testimony, and other testimony or evidence necessary or helpful to the court in making its determination. UCB failed to timely submit any additional information and attempted to do so only after the judge's reasonable discovery period had expired. We find that, based on the foregoing, the issues were sufficiently defined and the differences of the parties were adequately brought into focus.

These procedural guidelines adopted by the court make it clear that UCB's constitutional rights were adequately protected. UCB was given ample opportunity to confront, cross-examine, and refute the evidence upon which the court based its final determination. Thus, we agree with the court of appeals that the trial court did not deprive UCB of its constitutional rights.

We also believe that the court correctly assessed this substantial body of evidence in calculating the fair market value of the property. By stipulation the parties agreed that the fair market value would be determined by application of the "income approach." Under this approach, net income is calculated and capitalized at a predetermined rate. The court calculated the gross income of the property as the sum of three components: actual income generated by the non-bank tenants of the building, fair economic rent of the space occupied by the bank, and income derived by the submetering of electricity. Adjusted gross income was derived by discounting this figure three percent to account for vacancy and lost rent.

UCB objects to the court's calculations in several areas, the most significant being the following: (1) economic rent, (2) mathematical error,

and (3) double counting of land. We do not feel the court abused its discretion in its assessment of these factors. Regarding rent, the court resolved the factual disputes arising from conflicting appraisal reports in favor of the school board. This action was within the court's discretion and therefore was not an abuse. Cf. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13, 19-20 [73 O.O.2d 230]. With respect to mathematical error, there is sufficient evidence to show that any alleged error was corrected by the trial court prior to its final entry of judgment. We are also satisfied that the court sufficiently examined those allegations concerning the double counting of land and corrected any existing mistakes. The corrections ended the matter.

Since the trial judge based his decision upon ample evidence and modified his original findings to correct any existing errors, we hold that the final judgment of the trial court was not arbitrary, capricious, or unreasonable with respect to these matters and must be sustained.

We next turn to UCB's contention that the common pleas court applied a discriminatory, and therefore, unconstitutional level of assessment.

It is well-established in this state that taxation by uniform rule, within the requirements of Section 2 of Article XII of the Ohio Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution, requires uniformity in the mode of assessment. Real property, whether commercial, residential, or vacant, must be assessed on the basis of the same uniform percentage of actual value. *Goldberg* v. *Bd. of Revision* (1966), 7 Ohio St. 2d 139 [36 O.O.2d 179], syllabus, citing *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410 [25 O.O.2d 432]; *Koblenz* v. *Bd. of Revision* (1966), 5 Ohio St. 2d 214 [34 O.O.2d 424].

In 1972, that uniform rate of assessment was established at thirty-five percent of the true value in money of the property. This rate resulted from the culmination of a number of earlier cases involving the Park Investment Company. See *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals, supra; State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1968), 16 Ohio St. 2d 85 [45 O.O.2d 440]; *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1971), 26 Ohio St. 2d 161 [55 O.O.2d 338]; and *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1972), 32 Ohio St. 2d 28 [61 O.O.2d 238]. These cases indicate that the Board of Tax Appeals is required to assess real property at a uniform percentage of its true value, that percentage being set at thirty-five percent. The cases further establish that the uniform level of assessment be fully implemented by 1977.

UCB proffered evidence consisting of an affidavit and addendum purporting to show the average sales assessment ratios for the various counties in the state. Specifically, UCB argued that the common level of assessment, thirty-five percent, as applied by the board of revision and approved by the common pleas court, failed to reflect the true level of assessment applied to other properties in Cuyahoga County for the tax years 1977 and 1978. UCB bases this argument upon the affidavit of Jarren Ringle, Data Processing Chief of the Ohio Department of Tax Equalization, which

allegedly established that the common level of assessment for Cuyahoga County for the disputed tax years fluctuated between 28.68 percent and 23.59 percent. The affidavit of Ringle was not accepted into evidence by the common pleas court, due to its submission to that court after the established cutoff date for submission of additional evidence by the respective parties. The appeals court held that UCB's argument was well-taken and ordered that upon remand, the trial court accept additional evidence concerning the common level of assessment as applied to property within Cuyahoga County for the tax years 1977 and 1978.

For the following reasons, we must disagree with the result reached by the court of appeals. First, the affidavit of Ringle was properly excluded by the common pleas court because it was not submitted within the reasonable, even lenient, period established for discovery. Thus, the affidavit simply was not of evidentiary quality. Cf. *National City Bank of Cleveland* v. *National City Window Cleaning Co.* (1963), 174 Ohio St. 510, 515-516 [23 O.O.2d 146]. Even those cases cited by UCB which require uniform, nondiscriminatory assessment state that such assessment must be based upon "the evidence in the record[s]." *Koblenz* v. *Bd. of Revision, supra*, at 219. Since the Ringle affidavit is properly not part of the record, it may not be used to support a finding of discriminatory valuation.

Second, in the absence of any evidence to the contrary, we must assume that the common level of assessment for Cuyahoga County in the tax years 1977 and 1978 was fixed by the Commissioner of Tax Equalization, under the authority of R.C. 5715.01, at thirty-five percent. See *Columbus Bd. of Edn.* v. *J. C. Penney Properties, Inc.* (1984), 11 Ohio St. 3d 203. Surely the board of revision was cognizant of the assessment rates in effect on property in Cuyahoga County when it applied the thirty-five percent figure. Even if such awareness on the part of the board was lacking, the board's application of the thirty-five percent assessment was done in accordance with Ohio law. Because there is no proof in the record that a discriminatory, non-uniform level of assessment existed in Cuyahoga County and because the application of the thirty-five percent rate was in accord with Ohio law, we hold that the applied level of assessment was not discriminatory.

We believe our decision today comports with notions of fairness and judicial economy. The decision precludes the necessity of conducting still another evidentiary hearing which would involve further delay, additional expense and a duplicity of proof and which would, in all likelihood, result in a substantially similar outcome.

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and DOUGLAS, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. While I agree that R.C. 5717.05 does not mandate a full evidentiary hearing on an appeal from the board of revision, I conclude that the majority of the court of appeals below was correct in its determination to remand this case for such a hearing. Under the facts as presented, this case involves a building of substantial proportions, the value of which has been significantly increased by the board of revision. There are indications within the record that inappropriate rental income calculation methods were used and there is question concerning a multiple inclusion of real estate value into the appraisal determinations. More importantly, there remains the issue of the trial court's degree of confusion upon the evidence adduced. As pointed out by the appellate court's decision, the trial judge expressed his difficulty in understanding the various appraisal reports.

In any event, it is my conclusion that the taxpayer in this instance should be afforded the opportunity to present additional evidence in an effort to ascertain the fair market value of the property in question.