OPINION
{¶ 1} Greene County auditor Luwanna Delaney appeals from the trial court's decision and entry finding that the value of real estate owned by appellees Gene and *Page 2 
Connie Leber is $1, 870, 000 for tax year 2005.
 {¶ 2} The record reflects that the auditor's office issued the Lebers a notice of property valuation in September 2005, increasing the assessed value of their residence and land to $3, 250, 830. The Lebers subsequently filed a complaint with the Greene County Board of Revision ("BOR"), challenging the increase. In support, they submitted an appraisal report prepared by Stephen Weis. Following a hearing, the BOR issued an August 2006 order in which it accepted the auditor's valuation. The Lebers appealed the BOR's ruling to the Greene County Common Pleas Court pursuant to R.C. 5717.05.[1] After certification of the administrative record, the Lebers submitted a brief in which they asked the trial court to reverse the BOR and to accept their proposed valuation of $1, 870, 000. Attached to the Lebers' brief were two appraisal reports. The first report, dated May 9, 2006, was the one Weis had submitted to the BOR. The second report, dated November 5, 2006, was prepared by Weis following the BOR's decision. It contained approximately five pages of information not found in his first appraisal report.
 {¶ 3} In a responsive brief, auditor Delaney urged the trial court to disregard Weis' second appraisal report. Delaney claimed the second report included information — namely market data and analysis — that Weis specifically had removed from his first report before submitting it to the BOR. In arguing that the trial court should disregard the second appraisal report, Delaney relied primarily on R.C. 5715.19(G), which provides:
 {¶ 4} "A complainant shall provide to the board of revision all information or evidence within the complainant's knowledge or possession that affects the real *Page 3 
property that is the subject of the complaint. A complainant who fails to provide such information or evidence is precluded from introducing it on appeal to the board of tax appeals or the court of common pleas, except that the board of tax appeals or court may admit and consider the evidence if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision."
 {¶ 5} According to auditor Delaney, the additional market data and analysis found in the second appraisal report qualified as "information or evidence within the complainant's knowledge or possession" at the time of the BOR hearing. Because that information or evidence was not provided to the BOR and the Lebers made no effort to establish good cause for the omission, Delaney argued that R.C. 5715.19(G) precluded the trial court from considering the additional material in the second report.
 {¶ 6} Delaney also cited R.C. 5717.05, which provides that a trial court "may hear the appeal on the record and the evidence thus submitted [to the BOR], or it may hear and consider additional evidence." After citing the statute, Delaney argued: "This Court previously determined to hear this appeal on the record and the evidence submitted to the Board of Revision. Appellants have not filed a motion to submit additional evidence on appeal, and cannot accomplish that result simply by attaching additional material to their brief."
 {¶ 7} Finally, Delaney attempted to discredit Weis' appraisal on its merits. She primarily disputed his reduction in value of the Lebers' residence to account for "external obsolescence." She argued, inter alia, that he lacked sufficient data to support the reduction and that his "comparable" properties were not truly comparable to the Lebers' home. *Page 4 
 {¶ 8} The trial court rejected Delaney's arguments in an April 6, 2007 decision and entry. Regarding the auditor's objection to Weis' second appraisal report, the trial court reasoned as follows:
 {¶ 9} "* * * Appellees contend that the Appellants attachment of the second appraisal report to their brief, results in the submission of a very different appraisal to this Court, and is precluded by R.C.5715.19(G). In its reply brief, the Appellants state that under Ohio law, possession of information is not the same as being in possession of the completed appraisal report. As such, since the supplemental appraisal was not initiated nor in existence until after the decision of the BOR (although some of the facts on which the opinion relied may have been in existence), it could not have been withheld.
 {¶ 10} "Appellees' 5715.19(G) argument is without merit, as 5715.19(G) has never been applied to an appraisal prepared after the BOR hearing. Furthermore, in order to fully perform this Court's statutory duty, the Court exercising its discretion may examine additional evidence. Appellees were properly given notice of the evidence to be presented by the Lebers on Appeal. Based on an evaluation of the supplemental appraisal report, Mr. Weis' supplement simply expands upon and is an elaboration of the appraisal already in the record. Accordingly, the Court deems this evidence admissible and will consider this evidence in establishing the taxable value of the Lebers' property." (Doc. #25 at 9-10).
 {¶ 11} In her first assignment of error, auditor Delaney contends the trial court erred in allowing the Lebers to submit Weis' second appraisal report by attaching a copy to their brief. Delaney argues, among other things, that the second report contains *Page 5 
additional information that was within the Lebers' knowledge or possession at the time of the BOR hearing. Therefore, she maintains that R.C. 5715.19(G) precluded the trial court from considering the second report absent a showing of good cause for the Lebers' failure to present the information to the BOR.
 {¶ 12} In response, the Lebers contend R.C. 5715.19(G) precludes the introduction of evidence intentionally withheld from the BOR. They assert that the statute does not apply to an apprisal report prepared after a BOR hearing. Indeed, they reason that Weis' second report could not have been intentionally withheld because it did not exist when the BOR met. According to the Lebers, the issue is not whether the additional information contained in Weis' second appraisal report was known and in existence at the time of the BOR hearing. The issue, they assert, is whether the second report itself was in existence at the time of the BOR hearing. Because it was not, they insist that it was not withheld from the BOR in violation of R.C. 5715.19(G). The Lebers also argue that R.C. 5715.19(G) does not prohibit the introduction of Weis' second report because it merely elaborates on or amplifies the data contained in his first report.
 {¶ 13} Upon review, we find the Lebers' arguments to be unpersuasive. On its face, R.C. 5715.19(G) applies to "all information or evidencewithin the complainant's knowledge or possession that affects the real property that is the subject of the complaint." (Emphasis added). If such "information or evidence" is not presented to the BOR, the statute precludes its use in the trial court absent a showing of good cause. In our view, a party cannot avoid the consequences of R.C. 5715.19(G) by the simple expedient of taking market data and other information that was known to the party at the time of the BOR hearing and placing it in a second appraisal report that was prepared *Page 6 
after the hearing. Contrary to the Lebers' argument on appeal, we believe the critical "information or evidence" referenced in R.C.5715.19(G) is the substantive content of Weis' second appraisal report, not the mere existence of the report itself. If the rule were otherwise, a party easily could circumvent the statute by taking information or evidence withheld from the BOR and packaging it in a new document that did not exist at the time of the BOR's hearing. We reject an interpretation of R.C. 5715.19(G) that would permit such a result.
 {¶ 14} In reaching the foregoing conclusion, we are unpersuaded by the Lebers' citation to Palik Properties v. Cuyahoga Cty. Bd. ofRevision (Sept. 15, 2006), Bd. Tax App. No. 2004-B-1235, wherein the Board of Tax Appeals ("BTA") stated that it had "never applied 5715.19(G) to an appraisal prepared after the BOR hearing."Palik in turn relied on case law such as Strongsville Senior Associatesv. Strongsville Bd. of Educ. (March 7, 1991), Cuyahoga App. Nos. 58127 to 58129. In that case, one of the parties failed to present an appraiser or an appraisal report during a BOR hearing. Thereafter, the party retained an appraiser and obtained an appraisal report in preparation for a hearing before the BTA. The BTA allowed the appraiser's testimony and written report into evidence over an R.C.5715.19(G) objection. In so doing, the BTA reasoned that the relevant "information or evidence" under the statute was the "expert opinion of value." Because the appellant did not hire an appraiser or obtain an appraisal report until after the BOR hearing, the BTA opined that no expert opinion of value existed when the BOR met. Upon review, the Eighth District Court of Appeals reasoned: "Possessing the information [upon which the appraisal was based] is not the same as being in possession of the completed appraisal. Since the appraisal was not even initiated until *Page 7 
after the decision of the Board of Revision was rendered, it could not have been `withheld.'"
 {¶ 15} We make two observations in response to Strongsville. First, unlike that case, the Lebers did hire an appraiser and present an appraisal report to the BOR. In so doing, we believe R.C. 5715.19(G) obligated them to provide the BOR with "all information or evidence" within their knowledge or possession. This includes the additional market data and other information that Weis allegedly intentionally omitted from the first appraisal report he prepared on their behalf. Second, based on the reasoning set forth above, we disagree with the suggestion in Strongsville that the only relevant inquiry under R.C.5715.19(G) is whether Weis' second appraisal report was in existence at the time of the BOR hearing. To the contrary, if the information and evidence contained in his second appraisal report was known at the time of the BOR hearing, R.C. 5715.19(G) provides that it should have been submitted to the BOR.
 {¶ 16} In reaching the foregoing conclusion, we note that another case relied on by the Lebers, Coventry Towers, Inc. v. Strongsville (1985),18 Ohio St.3d 120, actually supports our interpretation of R.C.5715.19(G). In Coventry Towers, the complainants provided the BOR with an appraisal report prepared by an individual named Sam Canitia. Thereafter, the complainants submitted to the BTA a "revised appraisal and valuation analysis" prepared by Canitia. The opposing party objected to the revised analysis, arguing that R.C. 5715.19(G) precluded its admission into evidence. The BTA rejected the objection. On appeal, the Ohio Supreme Court agreed with the BTA, reasoning:
 {¶ 17} "The provision [R.C. 5715.19(G)] requires a complainant before the board *Page 8 
of revision to submit all pertinent information affecting the property in question within his knowledge or possession at that time. Appellant has presented no evidence that appellees had within their knowledge or possession the information contained in the revised valuation analysis when they were before the board of revision. In fact, Canitia testified that much of the information presented in his revised valuation analysis was obtained as a result of the hearing before the board of revision. In sum, there is no evidence to substantiate an intentional withholding of information by appellees. * * *" Id. at 121-122.
 {¶ 18} Although the Ohio Supreme Court upheld the BTA's consideration of the revised appraisal in Coventry Tower, its analysis is noteworthy for at least two reasons. First, the Coventry Towers court looked to see whether the information contained in the revised appraisal was within the appellees' knowledge or possession at the time of the BOR hearing, not whether the revised appraisal itself was in existence. This is consistent with our view that the proper inquiry is whether the additional information contained in Weis' second appraisal was known at the time of the BOR hearing. Coventry Towers undermines the Lebers' argument that R.C. 5715.19(G) cannot apply because the second appraisal itself did not exist at the time of the BOR hearing. It also undermines their reliance on cases such as Palik and Strongsville SeniorAssociates, supra, which appear to be at odds with Coventry Towers.
Second, the Ohio Supreme Court found the revised appraisal admissible inCoventry Towers because there was no evidence that the appellees had withheld from the BOR the information it contained. Unlike CoventryTowers, however, auditor Delaney asserts that the Lebers and Weisdid intentionally *Page 9 
withhold information from the BOR.[2] In fact, Delaney asserts that Weis actually removed from his first appraisal report certain information and evidence that he later added back into his second report.[3] Therefore, Coventry Towers does not support the Lebers' position that the trial court properly considered Weis' second report.
 {¶ 19} We are equally unpersuaded by the Lebers' argument that R.C.5715.19(G) does not preclude the introduction of Weis' second report because it merely elaborates on or amplifies data contained in his first report. On its face, the statute contains no exception to allow withholding from the BOR information or evidence that elaborates on or amplifies other evidence provided to the BOR. To the contrary, R.C.5715.19(G) unambiguously states that "[a] complainant shall provide to the board of revision all information or evidence within the complainant's knowledge or possession * * *." In our view, this includes information or evidence that elaborates on or amplifies other evidence presented to the BOR.
 {¶ 20} The Lebers' "elaboration or amplification" argument also is not supported by CASA 94, L.P. v. Franklin Cty. Bd. of Revision (2000),89 Ohio St.3d 622, a case discussed by the parties. In that case, an agent for the property owner, CASA 94, *Page 10 
testified at the BOR hearing and attempted to introduce certain documents. The BOR refused to consider the documents, however, because they were not authenticated and lacked a proper foundation. Thereafter, CASA 94 introduced testimony at the BTA hearing from an individual named Brian Murdy, who worked for the company that previously had sold the property at issue to CASA 94. Over an objection based on R.C.5715.19(G), Murdy testified about the terms of the sale and how the price was determined. Upon review, the Ohio Supreme Court rejected an argument that Murdy's testimony was proper amplification evidence. The court first observed that Murdy could not properly "amplify" documents that the BOR had refused to consider. The court then noted that "CASA did not attempt to show good cause why it had not presented the evidence or information Murdy testified about to the BOR." Id. At 625. In the present case, the Lebers likewise have not attempted to show good cause why they did not present to the BOR the additional information and evidence contained in Weis' second appraisal report. Consequently, the trial court erred in accepting the second appraisal report attached to the Lebers' brief.
 {¶ 21} Rather than simply attaching Weis' second report to their brief, the Lebers should have filed a motion to submit additional evidence under R.C. 5717.05, which authorizes a trial court to "hear and consider additional evidence" in an appeal from a BOR ruling. SeeBanbury Village, Inc. v. Cuyahoga Cty. Bd. of Revision (April 2, 1992), Cuyahoga App. No. 59980 (recognizing that "the proper procedure to request supplementation of the record pursuant to R.C. 5717.05 is filing a motion with the common pleas court accompanied by supporting evidence").
 {¶ 22} Moreover, auditor Delaney objected to Weis' second report on the basis *Page 11 
that the additional information it contained was within the Lebers' knowledge or possession at the time of the BOR hearing. In fact, Delaney argued that the Lebers' appraiser, Weis, had removed the additional information from his first report in order to prevent the BOR from considering it. Once Delaney lodged her objection, the trial court was obligated to conduct some inquiry into the matter. See, e.g., City ofBlue Ash v. Hamilton Cty. Bd. of Revision (Feb. 13, 2004), Bd. Tax App. No. 2003-R-1250 at n. 1 ("Implicit in [R.C. 5715.19(G)] and decisions construing the statute is the necessity for a hearing at which arguments regarding the propriety of the presentation or non-presentation of evidence before a board of revision can be made."). Given that it failed to do so, we must reverse the trial court's judgment and remand the cause for further proceedings.
 {¶ 23} On remand, Delaney must be given an opportunity to prove her assertion that the additional information in Weis' second appraisal report was within the complainants' knowledge or possession at the time of the BOR hearing. If the trial court finds that Delaney's assertion is true, then under R.C. 5715.19(G) the Lebers will have the burden to establish good cause for failing to present Weis' additional information to the BOR. If the trial court ultimately decides to consider the additional information contained in Weis' second report, auditor Delaney should be given an opportunity, if she requests one, to cross examine him about that additional information.[4] *Page 12 
 {¶ 24} Finally, we reject the Lebers' argument that the trial court's consideration of Weis' second appraisal report, even if erroneous, was at most harmless error. In support, the Lebers insist that the trial court necessarily would have reached the same conclusion regarding the value of their property if it had relied only on Weis' first appraisal report. As noted above, the first report omitted approximately five pages of market data and analysis found in the second report. The essence of the Lebers' argument is that Weis' first appraisal report nevertheless contained sufficient facts and data to support the trial court's valuation.
 {¶ 25} Even assuming, arguendo, that the first report did contain legally sufficient evidence to support the trial court's judgment, it does not follow that the trial court, in the exercise of its broad discretion, necessarily would have reached the same result if it had not considered the additional material in the second report. Indeed, the Lebers themselves certainly believed the additional market data and analysis contained in Weis' second report was important and persuasive. Otherwise, they would not have attached it to their brief and argued for its submission in the trial court. On the record before us, we *Page 13 
have no basis upon which to conclude that the trial court was not persuaded by its admitted consideration of this additional information. Therefore, we reject the Lebers' argument that the trial court's consideration of the second report was harmless error.
 {¶ 26} For the reasons set forth above, we sustain auditor Delaney's first assignment of error insofar as it is based on R.C. 5715.19(G). Before considering Weis' second appraisal report, the trial court must determine (1) whether it in fact contains additional information or evidence that was within the complainants' knowledge or possession at the time of the BOR hearing but not presented to the BOR, as Delaney alleges, and (2) if so, whether the complainants have shown good cause for failing to provide the information or evidence to the BOR.[5]
 {¶ 27} In a second assignment of error, auditor Delaney contends the trial court abused its discretion in relying on Weis' opinion to reduce the value of the Lebers' property. In particular, she challenges Weis' use of certain "comparable" properties to determine the true value of the Lebers' residence. Delaney argues that these other properties were not sufficiently similar to the Lebers' property to provide a meaningful basis for comparison.[6] *Page 14 
 {¶ 28} Upon review, we find auditor Delaney's second assignment of error to be unpersuasive. When a party appeals to a common pleas court from a decision of the board of revision, the trial court "has a duty on appeal to independently weigh and evaluate all evidence properly before it." Black v. Cuyahoga Cty. Board of Revision (1985), 16 Ohio St.3d 11,13. The trial court "is then required to make an independent determination concerning the valuation of the property at issue." Id. In conducting its review, the trial court enjoys broad discretion to assess the weight of the evidence and the credibility of the witnesses.Security Nat. Bank and Trust Co. v. Springfield City School Dist. Bd. ofEduc. (Sept. 17, 1999), Clark App. No. 98-CA-104. The trial court need not adopt the valuation of any witness or the appraisal methodology espoused by any expert. Id. The independent judgment of the trial court should not be disturbed on appeal absent an abuse of discretion.Black, 16 Ohio St.3d at 14.
 {¶ 29} In the present case, auditor Delaney first contends Weis' second appraisal report was "incompetent" because the BTA previously rejected a nearly identical appraisal he had submitted in the case ofSoin v. Greene Cty. Bd. of Revision, (Oct. 10, 2005), Bd. Tax App. No. 2004-V-490. In that case, Weis prepared an appraisal for Rajesh and Indu Soin regarding their 27, 250 square foot home on ninety acres of land. At the time of the appraisal, the Soin home was only sixty percent built. Weis opined that the unfinished home had no value because the cost to complete it would exceed its value when finished. He also opined that the residence would be worth $2, 470, 000 once *Page 15 
completed.
 {¶ 30} In support of his opinions in Soin, Weis performed a sales comparison analysis and relied on sales of Hamilton County and Montgomery County homes with 7, 500 square feet to 17, 250 square feet of living space on one to six acres of land. Without elaboration, the BTA found that these comparables provided no "meaningful basis of comparison" to the Soin property. Weis also considered the cost approach to valuation and found that the Soin residence should be depreciated by sixty percent. He supported this conclusion by comparing the cost to "construct/renovate" six other properties to the subsequent selling price of those properties. The BTA found that these six properties were not sufficiently comparable to the Soin property. It noted that five of them were renovated properties that had been built between 1915 and 1985. It observed that the sixth property, a newly constructed home, had been sold in a "distressed" sale. The BTA then found that the difference between the construction/renovation cost and sale price of the six homes was not competent or probative evidence of the value of the Soin home. In reaching this conclusion, the BTA noted that it had "great discretion" to determine the weight to assign to the evidence before it.[7]
 {¶ 31} Auditor Delaney contends the trial court should not have relied on Weis' second appraisal report because it uses the same methodology and comparables that the BTA rejected as not probative evidence inSoin. Delaney also argues that the trial *Page 16 
court's reliance on the second appraisal report violates the uniform rule of valuation found in Article XII, Section 2 of the Ohio Constitution. In support, she reasons that "[e]ither the BTA was correct in rejecting Weis' appraisal or the Common Pleas Court was correct in accepting that appraisal: the two decisions cannot stand together."
 {¶ 32} Turning first to the auditor's constitutional argument, we find no violation of Article XII, Section 2, which provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value * * *." The Ohio Supreme Court recognized in Black, supra, that Article XII, Section 2 "requires uniformity in the mode of assessment."Black, 16 Ohio St.3d at 16. "Real property, whether commercial, residential, or vacant, must be assessed on the basis of the same uniform percentage of actual value." Id. Here there is no allegation that the Soin property was assessed based on a different percentage of actual value than the Leber home.
 {¶ 33} Instead, auditor Delaney cites Exchange Bank of Columbus v.Hines (1853), 3 Ohio St. 1, 15, for the proposition that the uniform rule requires the same methodology to be used to value different pieces of real property. Once again, however, Delaney's own brief demonstrates that Weis did employ the same methodology to value the Soin residence and the Lebers' home. In both instances, he determined value by using the well recognized "cost approach" and the "market value approach." We find no authority for the proposition that Article XII, Section 2 obligated the trial court to reject Weis' conclusions in the Lebers' case simply because the BTA rejected the same or similar conclusions inSoin[8] *Page 17 
 {¶ 34} We are equally unpersuaded by the auditor's claim that the trial court abused its discretion when it accepted Weis' valuation methodology and his reliance on comparables that the BTA rejected inSoin. We find several reasons why the BTA's rejection of Weis' analysis in Soin did not require the same result in the Lebers' case. First, the auditor does not even suggest that the BTA's decision in Soin is entitled to any formal preclusive effect. Second, as the auditor herself has recognized, it remains possible that the BTA was mistaken when it found that Weis' comparables in Soin were not sufficiently similar to the subject property there. The Soins did not raise this issue in their appeal to the Ohio Supreme Court, choosing instead to challenge only the BTA's valuation of their land. Third, the BTA's rejection of Weis' analysis in Soin does not necessarily conflict with the trial court's acceptance of his analysis in the Lebers' case. For one thing, as the appellees point out, the Soin property and the Lebers' property are not identical. It does not follow that the Lebers' property is not sufficiently similar to Weis' comparables simply because the Soin home is not comparable to them. Even more importantly, the BTA and the trial court both enjoy great discretion in deciding what evidence to accept or reject and in deciding the weight to afford the evidence presented. In the exercise of its broad discretion, the BTA reasonably may have decided to reject Weis' evidence. At the same time, however, the trial court allegedly examined much the same market data and analysis and found the evidence sufficiently reliable and probative to be of assistance. Given the substantial discretion afforded the BTA and the trial court in assessing and weighing evidence, both decisions very well may be "correct" *Page 18 
in the sense that neither constitutes an abuse of discretion.
 {¶ 35} In any event, having reviewed the record before us, we do not find that the trial court abused its discretion in reducing the value of the Lebers' property based on the market data and analysis found in Weis' second appraisal report.[9] On appeal, auditor Delaney's objection to Weis' valuation of the Lebers' residence concerns what she characterizes as his unsupported and inappropriate deduction in value to account for "external obsolescence." In her appellate brief, Delaney acknowledges that her own appraisal of the Lebers' home is consistent with Weis' appraisal "with the exception of Weis' extra deduction from value for `external obsolescence.'" Appellant's Brief at 2. Delaney characterizes this deduction as "massive" and contends it "was totally improper and was not supported by any convincing or reliable evidence." Id. at 2-3.
 {¶ 36} In his second appraisal report, Weis explained that physical improvements to property may depreciate due to "external obsolescence," which results from "impacts upon a property from external sources." The "external sources emanate from several causes, including social changes, economic changes, governmental changes, and environmental changes." See Appendix 2 to Appellees' Brief, Second Appraisal Report at 27. Specific conditions that may cause external obsolescence include "a lack of demand, changing property uses in the area, or national economic conditions." Id. at 19. External obsolescence also may result from the location of a piece of property. Id. at *Page 19 
32[10]
 {¶ 37} To support his finding of external obsolescence, Weiss conducted a market-segmentation study of the Dayton area. Id. at 10-11. He found that "the supply vs. demand for the re-sale of properties over $1,000,000 is in disequilibrium (supply greater than demand)," resulting in a reduced value for the Lebers' residence. Id. at 19. Weis also found some external obsolescence arising because the Lebers' 18, 333 square-foot, five bedroom, eight bathroom residence is incompatible with surrounding homes. He explained: "The subject is considered monumental or ostentatious which is considered out of place in the modest setting of a largely suburban and rural area. The size or scale of the property is also not compatible with surrounding properties * * * These types of properties conform with the high end properties found near major economic centers (cities) such as Los Angeles, New York, Chicago, Dallas, Atlanta, and to a lesser extent Cincinnati, Columbus, and Cleveland. Buildings with incongruous designs typically are sold at a per unit price below the general market level. A comparison of similar properties sold in these markets to those sold in the Dayton *Page 20 
market can show a certain degree of external economic obsolescence." Id. at 20.
 {¶ 38} When arriving at a value for the Lebers' residence, Weis measured external obsolescence by conducting a market-extracted depreciation analysis and a market data analysis. See Higbee,107 Ohio St.3d at 332 ("Three methods are set forth in The Appraisal of Real Estate for calculating external obsolescence: (1) allocation of market-extracted depreciation, (2) market data analysis, and (3) capitalization of income loss."). "In its simplest terms, the [market-extracted depreciation] approach compares the sale price (excluding land value) of properties similar to the subject with their estimated reproduction cost to derive a total depreciation factor, including physical deterioration and obsolescence." Meijer Stores Ltd.Partnership v. Defiance Cty. Bd. of Revision (March 3, 2006), Bd. Tax App. No. 2003-T-2035, at *4. In the present case, Weis compared the sale price of six Dayton-area homes to their construction or renovation cost to arrive at an obsolescence factor that ranged from approximately forty percent to seventy percent. See Second Appraisal Report at 32-33.
 {¶ 39} Weis then performed a market-data analysis as an additional assessment of external obsolescence. This type of analysis "derives an estimate of value by comparing the subject property to the sale prices of similar properties." Meijer, supra, at *4. In particular, Weis compared the sale price of nineteen Dayton-area luxury homes with the sale price of four "similar type and sized" homes from the Indian Hill suburb of Cincinnati, which Weis characterized as having "an active market for homes priced over $1, 000, 000 * * *." See Second Appraisal Report at 33-35. In calculating external obsolescence, he noted that the Indian Hill homes sold at a price close to their construction cost, whereas the Dayton-area homes lost approximately fifty to sixty-seven *Page 21 
percent of their construction cost when sold. Based on his determination (1) that construction costs in Dayton and Cincinnati are similar and (2) that the Dayton-area homes and Indian Hill homes were similar in "type and size," Weis attributed the reduced sale price of the Dayton-area homes to external obsolescence due to location. Id.
 {¶ 40} After performing the foregoing analysis, Weis opined that the cost of the Leber residence should be reduced by five percent to account for physical depreciation, twenty-five percent to account for functional obsolescence, and approximately thirty-five percent to account for external obsolescence. Id. at 35-36. The resulting market value for the Lebers' home was $1,677,252. He added this amount to the $270,000 value he placed on their land to arrive at a total market value of approximately $1,947,000.
 {¶ 41} In a subsequent section of his appraisal, Weis determined the value of the Lebers' home by using the "sales comparison approach" to value.[11] In so doing, he selected seven upscale Dayton-area homes that were as similar to the Lebers' residence as he could find. He examined the sale price of these other homes and extrapolated from this information a likely market value for the Lebers' residence. *Page 22 
Because no two properties are identical, he made price adjustments to account for differences in market conditions at the time of sale, financing terms, location, size, age, and special design features. See Second Appraisal Report at 39-43. Based on these computations, he determined that the Lebers' residence and land had a value of $1, 810, 000 under the sales comparison approach. Id. at 43. Finally, Weis reconciled his $1, 947, 000 market value under the cost approach with his $1, 810, 000 market value under the sales comparison approach and established a final fair market value of $1, 870, 000. Id. at 44.
 {¶ 42} After examining Weis' analysis, the trial court accepted his $1, 870, 000 valuation. It found that the Lebers had presented "competent and probative evidence" and that auditor Delaney had not rebutted the Lebers' evidence. While taking into account certain deficiencies in Weis' appraisal, the trial court found "no infirmity so serious" to warrant the rejection of Weis' valuation.
 {¶ 43} On appeal, auditor Delaney criticizes Weis' comparison of the sale price of six Dayton-area homes to their construction or renovation cost to arrive at an obsolescence factor that ranged from approximately forty percent to seventy percent. She also criticizes his comparison of upscale Dayton-area homes to Indian Hill homes as part of his external obsolescence analysis. Finally, she argues that the seven comparable homes Weis relied on in his "sales comparison approach" were not sufficiently similar to the Lebers' residence.
 {¶ 44} Auditor Delaney's criticisms fail to persuade us that the trial court abused its discretion in accepting Weis' valuation. As part of his market-extracted depreciation analysis, Weis examined six Dayton-area homes that cost between $2, 100, 000 and *Page 23 
$4, 500, 000 to build or renovate. He used the renovation cost for most of these homes because they were older. The key point of this analysis was that these high-end homes later sold, on average, for about half of their construction or renovation cost. Delaney challenges Weis' comparison of the renovation cost of the older homes to their sale price. Whether they involved new construction or renovation, however, Weis' central point was that these expensive homes sold for roughly half of what their owners had invested in them. The trial court did not abuse its discretion in finding such data to be competent and probative evidence of the value of the Lebers' home. If other multimillion-dollar homes in the Dayton area are selling at such a steep discount to cost, the trial court reasonably could have concluded that the Lebers' home would do the same. The trial court likewise did not abuse its discretion in relying on Weis' observation that Indian Hill homes sold at a price close to their construction cost, whereas Dayton-area luxury homes lost approximately fifty to sixty-seven percent of their construction cost when sold. Once again, the key point is that expensive homes around Dayton have a market value much lower than their construction cost. This is true regardless of why the Indian Hill homes retained their value better.
 {¶ 45} Finally, the trial court did not abuse its discretion in accepting Weis' reliance on seven local properties in his sales comparison approach. Although auditor Delaney distinguishes these properties from the Lebers' residence in various ways, Weis recognized the differences and made adjustments in his valuation to account for them. Having reviewed Weis' report, we believe it was probative enough to permit the trial court, in the exercise of its discretion, to rely on his valuation. Moreover, as the trial court pointed out, Delaney presented no competing evidence to rebut Weis' market data *Page 24 
and analysis. See Westhaven Inc. v. Wood Cty. Bd. of Revision,81 Ohio St.3d 67, 70, 1998-Ohio-446 ("If the appellee before the BTA in a valuation case does not present any evidence to rebut appellant's evidence, the appellee takes the chance that the BTA may, as in this case, find the valuation evidence presented by the appellant to be competent and probative, and adopt it as the true value.").[12]
Accordingly, we overrule auditor Delaney's second assignment of error.
 {¶ 46} Having sustained auditor Delaney's first assignment of error insofar as it is based on R.C. 5715.19(G), however, we will reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.
 {¶ 47} Judgment reversed and cause remanded.
FAIN and DONOVAN, JJ., concur.
[1] R.C. 5717.05 authorizes a property owner to appeal from a board of revision to a common pleas court as an alternative to an appeal to the Board of Tax Appeals.
[2] Although Coventry Towers discusses information being "intentionally withheld" from the BOR, the Ohio Supreme Court later clarified in Garfield Mall Assoc. v. Cuyahoga Cty. Bd. Of Revision
(1993), 66 Ohio St.3d 247, 248, that the withholding of information from the BOR need not be "intentional" for the exclusionary language of R.C.5715.19(G) to apply. The inadvertent withholding of information from the BOR also may justify preclusion under the statute. Id.
[3] Based on the record before us, we cannot determine whether Delaney's allegations are true. Although Delaney raised this argument below, the trial court did not resolve it. On remand, Delaney must be given an opportunity to demonstrate that the additional information contained in Weis' second report was within the complainants' knowledge or possession at the time of his first report.
[4] For their part, the Lebers contend Delaney waived any objection to the lack of a hearing under R.C. 5717.05, which gives the trial court discretion to "hear and consider additional evidence," or to the lack of cross examination of Weis by failing to seek such relief below. Although it is true that Delaney did not specifically object to the lack of a hearing or to the lack of cross examination, our reversal of the trial court's judgment is not predicated on the lack of a hearing under R.C.5717.05 or the lack of cross examination of Weis. Instead, we have found reversible error in the trial court's failure to determine under R.C.5715.19(G) whether the additional information in Weis' second appraisal report was within the complainants' knowledge or possession at the time of the BOR hearing and, if so, whether good cause existed for their failure to present the information to the BOR. Delaney plainly did raise this issue below. Rather than determining whether Delaney's allegations were true, the trial court incorrectly found that R.C. 5715.19(G) did not apply because Weis' second report was prepared after the BOR hearing and because it merely expanded or elaborated upon the first report. Having rejected those arguments above, we remain confronted with the central issue raised by Delaney, namely whether the additional information in Weis' second appraisal report was within the Lebers' knowledge or possession when the BOR met. We believe the trial court must resolve this issue in the first instance on remand.
[5] If the trial court finds that the second appraisal report does contain additional information or evidence that was within the complainants' knowledge or possession when the BOR met and, further, that the complainants have not shown good cause for failing to provide the information to the BOR, then the trial court should determine the value of their property without considering the second appraisal report.
[6] Although we have found a remand necessary to determine whether the additional information in Weis' second appraisal report was properly before the trial court, we note that auditor Delaney's second assignment of error is not moot. Therein, Delaney contends the evidence does not support the trial court's valuation of the Lebers' property even if thesecond appraisal report is taken into consideration. If this assertion is true, Delaney would be entitled to a reversal of the trial court's decision and reinstatement of the valuation established by the Greene County Board of Revision, without the need for a remand at all. Therefore, the argument raised in her second assignment of error is not moot.
[7] Although the Soins appealed the BTA's ruling to the Ohio Supreme Court, they did not challenge the BTA's rejection of Weis' evidence regarding the value of the physical improvements to the property. Instead, their appeal to the Ohio Supreme Court addressed only the BTA's valuation of their land, something not at issue in the present case. SeeSoin v. Bd. of Revision, 110 Ohio St.3d 408, 410, 2006-Ohio-4708.
[8] For present purposes, we will assume, arguendo, that Weis' appraisal report in Soin was substantially similar to the second appraisal report he prepared for the Lebers. Although auditor Delaney contends this is true, the Soin appraisal report itself is not part of the record in this case.
[9] This assumes, of course, that the additional market data and analysis found in Weis' second appraisal report was properly before the trial court, an issue we have addressed in our resolution of auditor Delaney's first assignment of error.
[10] See also Higbee Co. v. Cuyahoga Cty. Bd. of Revision,107 Ohio St.3d 325, 331, 2006-Ohio-2 ("The Appraisal of Real Estate (12th Ed.2001) 395-396, recognizes three types of depreciation: (1) physical deterioration, (2) functional obsolescence, and (3) external obsolescence. External obsolescence attempts to adjust for a loss in real-property value caused by factors outside the property. Id. at 412. The Appraisal of Real Estate states, `External obsolescence may be caused by economic or locational factors. It may be temporary or permanent, but it is not usually considered curable on the part of the owner, landlord, or tenant.' Id. The text further states that `[e]xternal obsolescence usually carries a marketwide effect and influences a whole class of properties, rather than just a single property.' Id. One example of external obsolescence used in The Appraisal of Real Estate is that of an apartment project located downwind of a new asphalt plant. The value of that property is reduced by the external factor of the asphalt plant. Id. at 413.").
[11] In contrast, the external obsolescence calculations performed by Weis in the market-extracted depreciation analysis and market data analysis discussed above were part of his "cost approach" to valuation. The cost approach seeks to determine "the sum of the land value and the depreciated cost of the new improvements." See Second Appraisal Report at 22. On the other hand, the "sales comparison approach" to value "compares properties with similar utility as the subject property in order to reach a value indication." Id. at 39. Under this approach, "[a]ny differences in physical attributes, conditions, or amenities are quantified. The impact of unconventional methods of financing and/or the market conditions at the time of sale are also quantified. The differences are quantified by a series of adjustments to the comparables and reconciled into an indication of value for the subject." Id.
[12] Although Westhaven involved an appeal to the BTA rather than the common pleas court, "the common pleas court and the BTA fulfill the same function when reviewing a decision of a board of revision, and BTA case law may be applied to the common pleas court proceedings in such appeals." Murray Co. Marina, Inc. v. Erie Cty. Bd. of Revision (1997),123 Ohio App.3d 166, 172. *Page 1