**SIEBENTHALER COMPANY, Appellee,**

v.

**MONTGOMERY COUNTY BOARD OF REVISION et al., Appellants.**

[Cite as *Siebenthaler Co. v. Montgomery Cty. Bd. of Revision* (1991), 74 Ohio App.3d 103.]

Court of Appeals of Ohio,
Montgomery County.

No. 12271.

Decided May 14, 1991.

*Cowden, Pfarrer, Crew & Becker* and *Joseph P. Buchanan,* for appellee.
*Lee C. Falke,* Prosecuting Attorney, and *Marcell N. Dezarn,* for appellants.

BROGAN, Judge.

Appellants, the Montgomery County Board of Revision, the Montgomery County Auditor and the Montgomery County Treasurer, raise two assignments of error in their appeal from the classification of a portion of the Siebenthaler Company's ("Siebenthaler") property as agricultural in nature, which qualified that portion for a tax reduction pursuant to the Current Agricultural Use Value ("CAUV") program.

In 1988, Siebenthaler applied for a renewal of its CAUV tax reduction for its property at 6000 Far Hills Avenue in Montgomery County, Ohio. This property had been acquired by Siebenthaler in the 1950s and had been receiving the CAUV tax reduction each year since the initial application for it was granted in 1975.

After receiving Siebenthaler's renewal application, the Montgomery County Auditor made a field inspection of the property and determined that it did not qualify for the CAUV tax reduction. Upon notification of this, Siebenthaler attended an informal hearing conducted by the Auditor's office. The results of the hearing were to affirm the initial denial of the renewal application. Thereafter, Siebenthaler filed a complaint with the Montgomery County Board of Revision ("the board"). After a hearing, the board upheld the decision of the Auditor. In its decision, the board found that the property did not qualify for the tax reduction and, further, that Siebenthaler was responsible for payment of four years' recoupment on the property taxes, as provided in R.C. 5713.34.

Pursuant to R.C. 2506.01, Siebenthaler filed a notice of appeal with the Montgomery County Common Pleas Court appealing the board's decision

denying its request for the CAUV tax reduction on 3.2 acres of its property and for the board's decision seeking recoupment of the back taxes. In accordance with R.C. 5715.05, the transcript and the evidence offered at the hearing before the board were certified to the common pleas court. Briefs were filed by both parties and on April 4, 1990, the court rendered its decision, finding that the 3.2 acres should be granted a CAUV tax reduction and the remaining 1.96 acres should not be granted such a tax reduction. The court further held that Siebenthaler was not responsible for payment of four years' recoupment on the property taxes since a conversion had not occurred. It is from this judgment that the board, the County Auditor and County Treasurer appeal.

In their first assignment of error, appellants argue that the trial court erred in finding that Siebenthaler's retail garden center and adjoining parking lot qualify for a tax reduction under the CAUV program when the land itself is not used to produce agricultural products.

R.C. 5717.05 provides that the court of common pleas may hear the appeal on the record and evidence thus submitted, or consider additional evidence. The court shall independently determine the taxable value of the property whose valuation or assessment for taxation is complained of and the judgment of the trial court shall not be disturbed absent a showing of abuse of discretion. *Black v. Bd. of Revision* (1985), 16 Ohio St.3d 11, 16 OBR 363, 475 N.E.2d 1264.

The trial court made the following findings of fact:

"The Appellant, the Siebenthaler Company acquired the site at 6000 Far Hills Avenue in the 1950's. In 1958, buildings were constructed consisting of a 7500 square feet of heated space, 5200 square feet of cover space, but not enclosed or heated and 4500 square feet of lath shade house for the production and marketing of its horticultural products.

"In 1968, the Appellant leased to Winter's National Bank and Trust Company approximately 2800 square feet of space in its building. In 1975, the Appellant leased to Arthur Treachers approximately 19125 square feet of land and a restaurant was constructed on that site. The Appellant's first application for CAUV was made on February 28, 1985. At that time the use of the site was substantially the same as it had been in 1958 when the buildings were constructed. The land was used for producing and selling nursery stock such as ornamental trees, shrubs, flowers, etc. The initial application excluded 1.26 acres that were not devoted to agriculture use and applied for a CAUV for four (4) acres. This application was approved as were subsequent renewal applications."

The trial court noted that the Auditor, in denying the appellee's application for the CAUV program, made no attempt to separate the 5.56 acres into agricultural and non-agricultural use. The court noted the appellee had sought CAUV treatment of 3.2 acres of the 5.56 acre tract.

In concluding that the appellee was eligible for CAUV treatment on a portion of its tract of land, the trial court made reference to the Ohio constitutional provision which permits laws to be passed giving favorable tax treatment to land used exclusively for agricultural use. Section 36, Article II of the Ohio Constitution provides in part:

"Laws may be passed to encourage forestry and agriculture, and to that end areas devoted exclusively to forestry may be exempted, in whole or in part, from taxation. Notwithstanding the provisions of section 2 of Article XII, *laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use.* Laws may also be passed to provide for the deferral or recoupment of any part of the difference in the dollar amount of real property tax levied in any year on land valued in accordance with its agricultural use and the dollar amount of real property tax which would have been levied upon such land had it been valued for such year in accordance with section 2 of Article XII." (Emphasis added.)

R.C. 5713.31, which invokes this constitutional provision, provides for such a tax structure:

"At any time after the first Monday in January and prior to the first Monday in March of any year, an owner of agricultural land may file an application with the county auditor of the county in which such land is located, requesting the auditor to value the land for real property tax purposes at the current value such land has for agricultural use, in accordance with rules adopted by the commissioner for the valuation of such land. An owner's first application with respect to his land shall be in the form of an initial application. Each application filed in ensuing consecutive years after the initial application by that owner shall be in the form of a renewal application. The commissioner shall prescribe the form of the initial and the renewal application, but the renewal application shall require no more information than is necessary to establish the applicant's continued eligibility to have his land valued for agricultural use, for all lots, parcels, or tracts of land, *or portions thereof,* within a county, that have been valued at the current value of such land for agricultural use in the preceding tax year."

The trial court conceded that the intent of Section 36, Article II "was to give relief to farmers whose land was slowly being engulfed by commercial land through the growth of towns and cities and who were being driven out of

business by the soaring real property taxes attendant upon revaluation of their property under the highest and best use rule." The court found that appellee's activities at the garden center comport with the applicable statutes and the court found that appellant produces and sells, for a commercial purpose nursery stock, ornamental trees, and flowers at the subject property and its activity fell within the definition of R.C. 929.01 and R.C. 5713.30(A).

"Land devoted exclusively to agricultural use" means, *inter alia,* tracts, lots or parcels of land which were devoted exclusively to commercial animal or poultry husbandry, the production for commercial purposes of field crops, tobacco, fruits, vegetables, timber, *nursery stock, ornamental trees, sod, or flowers* where such activities produced an average yearly income of at least $2500, or that were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government. R.C. 5713.30(A)(2).

R.C. 929.01(A) defines "agricultural production" as commercial apiculture, animal husbandry, or poultry husbandry, the production for a commercial purpose of field crops, tobacco, fruits, vegetables, timber, *nursery stock, ornamental trees, flowers, or sod,* or any combination of such husbandry or production, including the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with such husbandry or production.

Robert Siebenthaler testified that his company operated a garden center on the subject property and produced flowers in poly-houses or greenhouses on 3.2 acres of the property site. He said his company produced annuals, perennials, roses and shade trees on this acreage. Siebenthaler said the remaining portion of the 5.16 acres contained the garden center, a bank, a restaurant, and a parking lot. Siebenthaler said the greenhouses are nonpermanent structures which protect the plant material being grown.

The appellants contend that appellee should not receive a CAUV exemption because none of the plants, flowers, shrubs, or trees are being produced in the land comprising the 3.2 acres, but are contained in self-contained pots, concrete beds or individual bags of dirt and are on the property solely for the purpose of sale. The appellants also contend that appellee's property is not used "exclusively" for agricultural uses.

The appellee counters that it is not seeking a CAUV exemption for that portion of its property used as a garden center, but only that portion used to "produce" trees and flowers.

In *Johnson v. Fairfield Bd. of Tax Review* (1970), 160 Conn. 71, 273 A.2d 706, the Supreme Court of Connecticut held that land leased to a nursery and used for growing plants, trees, and shrubs was entitled to classification as

farmland under a tax statute which provided for preferential treatment for farmland where that statute did not define "farmland" but the general statutes defined "agriculture" and "farming" as raising or harvesting any agricultural or horticultural commodity, and defined "farm" so as to include nurseries, greenhouses or structures used primarily for raising agricultural or horticultural commodities.

■ Statutes relating to exemption or exception from taxation are to be strictly construed, and one claiming such exemption or exception must affirmatively establish his rights thereto. *National Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648.

The trial court found that the appellee had adequately demonstrated that he had dedicated a portion of his land exclusively to the production of products deemed "agricultural" as defined in R.C. 5713.30 and 929.01. The fact that such production occurs above ground in a greenhouse does not disqualify the production from the "agricultural use" exemption. The appellants' assignment is overruled.

■ In appellants' second assignment of error, they contend that the trial court erred in finding that Siebenthaler's property was not converted pursuant to R.C. 5713.30(B), where the section requires only that the land not qualify for CAUV exemption at the time of the filing of the application to be converted.

R.C. 5713.30(B) states:

"(B) 'Conversion of land devoted exclusively to agricultural use' means any of the following:

"(1) The failure of the owner of land devoted exclusively to agricultural use during the next preceding calendar year to file a renewal application under section 5713.31 of the Revised Code without good cause as determined by the board of revision;

"(2) The failure of the new owner of such land to file an initial application under that section without good cause as determined by the board of revision;

"(3) The failure of such land or portion thereof to qualify as land devoted exclusively to agricultural use for the current calendar year as requested by an application filed under such section."

Of interest in the present case, is the application of R.C. 5713.30(B)(3). We find that this provision provides for a "conversion" if there is a failure of the land to qualify as land devoted exclusively to agricultural use for the current calendar year. We do not find that any physical act by Siebenthaler needs to be performed to have a conversion under this section. Appellants' second assignment of error is sustained.

We addressed appellants' second assignment because we are required to do so pursuant to App.R. 12. Because we overruled appellants' first assignment, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON and GRADY, JJ., concur.

GRADY, Judge, concurring.

I fully concur with Judge Brogan's analysis and opinion as I believe the statute and the facts before us compel the result reached. However, a further comment is appropriate in view of that result.

Section 36, Article II of the Ohio Constitution states that "laws may be passed to provide that land *devoted exclusively to agricultural use* be valued for real property tax purposes at the current value such land has for such agricultural use." (Emphasis added.) The provision was intended "to give relief to farmers whose land was slowly being engulfed by commercial land through the growth of towns and cities and who were being driven out of business by the soaring real property taxes attendant upon revaluation of their property under the 'highest and best use' rule." *Bd. of Edn. v. Bd. of Revision* (1979), 57 Ohio St.2d 62, 66, 11 O.O.3d 220, 222, 386 N.E.2d 1113, 1116, fn. 4.

Under a test for exclusive use, an owner may be denied the exemption when any portion of his entire tract, parcel, or lot includes a purpose inconsistent with devotion of the entire tract to agricultural use. See Ohio Atty. Gen. Ops. Nos. 77–020 and 84–017. R.C. 5713.31 rejects this test and applies the agricultural use exemption to "lots, parcels, or tracts of land, or *portions thereof,* * * * that have been valued at the current value of such land for agricultural use in the preceding tax year." (Emphasis added.) The statute thus creates a type of grandfather provision for *portions* of tracts and preserves the tax exemption for the last corner of an owner's land on which an agricultural use is maintained. While this result protects those who wish to continue to farm, it also benefits other owners who convert substantial parts of their land to nonagricultural uses. That result is inconsistent with the *exclusive use* contemplated by Section 36, Article II, and unfairly benefits an owner while he holds ever-diminishing parts of his former agricultural land for the best price available for other uses.

The 5.16 acres owned by appellee is located at one of the busiest and most highly developed intersections of Montgomery County. The owner has already permitted a bank, a restaurant, and a nursery store and parking lot to be erected on 1.9 acres of his tract. Appellant advises that the taxable value of the remaining 3.2 acres without the exemption would be $158,480, while the

taxable value of the property with the exemption is $740. The unfairness to appellee's neighbors, and to its competitors who do not enjoy the exemption, is manifest.

The legislature should address seriously whether R.C. 5731.31, in its current form, continues to serve the purposes of Section 36, Article II of the Ohio Constitution.