[Cite as *NTD Propertied, Ltd. v. Clark Cty Aud.*, 2013-Ohio-3652.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

NTD PROPERTIES, LTD.                          :

    Plaintiff-Appellant                      :       C.A. CASE NO.    2013 CA 13

v.                                            :       T.C. NO.    09CV323

AUDITOR OF CLARK COUNTY, OHIO,                :       (Civil appeal from
et al.                                                Common Pleas Court)

    Defendants-Appellees                     :

                                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of ___August___, 2013.

. . . . . . . . . .

RICHARD F. HEIL, JR., Atty. Reg. No. 0033661 and WAYNE E. SOUTHWARD, Atty. Reg. No. 0009439, One South Limestone Street, Suite 800, Springfield, Ohio 45502
    Attorneys for Plaintiff-Appellant

KAROL C. FOX, Atty. Reg. No.0041916 and MARK H. GILLIS, Atty. Reg. No. 0066908, 6400 Riverside Drive, Suite D, Dublin, Ohio 43017
    Attorneys for Defendant-Appellee Clark-Shawnee Local Schools

WILLIAM D. HOFFMAN, Atty. Reg. No. 0047109, Assistant Prosecuting Attorney, 50 E. Columbia Street, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Defendants-Appellees Auditor of Clark County, Ohio and Board of
        Revision of Clark County, Ohio

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of NTD Properties, Ltd. ("NTD"), filed February 7, 2013. NTD appeals from the January 8, 2013 judgment of the court of common pleas that overturned the February 6, 2009 decision rendered by the Board of Revision of Clark County ("BOR"), which recommended that the true value of real property owned by NTD be reduced to $3,350,000.00. The property is located at 785 Benjamin Drive, in Springfield. In overturning the decision by the BOR, the court adopted the original valuation of $4,396,750, as determined by the Auditor of Clark County.

{¶ 2} The record before us reflects that NTD filed its Complaint Against the Valuation of Real Property in March, 2008, regarding tax year 2007. The complaint provides that an appraisal is being obtained, and that the true market value of the property is $3,000,000.00. The complaint indicates that improvements in the amount of $21,420.00 were made to the property in August, 2006. The Clark-Shawnee Local School District Board of Education ("BOE") filed a counter-complaint, asserting that the true market value of the property is $4,396,750.00. We note that the property record card shows that the Auditor applied a cost approach to determine the value of the property. The card indicates a value for the building of $3,935,750.00 and a value of $460,780.00 for the land.

{¶ 3} A hearing was held on January 29, 2009, before the BOR. Present at the hearing were Leland Coe, of Leland M. Coe & Associates, Nick and Teresa Demana, the owners of NTD, as well as counsel for NTD and BOE. Members of BOR in attendance were George Sodders, Auditor; Roger Tackett, a representative from the Auditor's office; and John Ebert and Daniel Anderson of Cama Resources and Technologies.

{¶ 4} Coe testified that he appraised the Springfield property. He stated that it is

located in the Prime Ohio Corporate Park. According to Coe, the property "is improved with a one-story metal heavy manufactured structure on a slab foundation," which he described as "a long narrow building, which is very typical for a crane building." He stated that the building contains an office area with a "waiting room, a reception area, a general office, a conference room, 22 offices, a lunchroom, and four restrooms containing 10,500 square feet." Coe stated, the "second area is the warehouse area, containing 105,000 square feet for a total 115,500 square feet." Coe stated that the building was built in 1995, and that it has 25-foot ceilings in the manufacturing area which are "not typical for an industrial building."

{¶ 5}     Coe stated that he performed a "market approach" analysis in the course of appraising the property, and he described three properties outside of Clark County that he used for comparison purposes, one of which was in Springboro, and two of which were in Moraine. According to Coe, he "looked throughout the Springfield area. The Springfield area has got a very, very, very limited amount of sales. I talked to Jeff Levine, Doug Cox, and several other people, and you know, Pace and CoStar. So I've been trying to look for a crane-type building such as this." Coe stated that he did not perform a "cost approach" analysis because the building is "approximately 10 years old," and it is difficult to calculate depreciation. Coe further stated that he did not perform an "income approach" analysis because the property is owner occupied, and the narrow nature of the building makes it difficult to rent or lease. According to Coe, "it's so specialized that it would not make any sense at all. * * * Yes, I can go all throughout southwest Ohio. Again, it can go from 50 cents all the way up to 2.50. But I decided because of an owner-occupied building the

income approach is not for me at all for this type of building."

{¶ 6}   Coe provided a 44 page Summary Appraisal Report detailing his analysis and conclusion. His attached certification provides that "the reported analyses, opinions and conclusions were develope[d], and this report has been prepared, in conformity with the requirements of the Code of Profession Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute."   The report includes the Warranty Deed, which reflects that NTD purchased the property for $1,584,500.00 on August 28, 2000.   The report provides that the property is comprised of 15.90 acres. The report indicates that Coe considered the "Cost Approach, the Market Approach and the Income Approach to Value." The report provides that "Cost Approach Analysis" is "most beneficial when used on new or nearly new structures.  Due to the age of the subject this approach is considered but not used."   Regarding the "Income Approach Analysis," the report indicates that it "is not typical to lease this type of building, but to purchase it.   Therefore this approach is considered but not used."

{¶ 7}   Regarding the "Market Approach Analysis," the report identifies a 4.129-acre property on Sharts Road, in Springboro, containing a "one story crane building on a slab foundation," consisting of 72,000 square feet, that sold on October 10, 2006 for $840,000.00.   According to the report, "it is larger in land size and a +10% adjustment is warranted.   It is smaller in building size and a -20% adjustment is warranted.   The other factors are considered similar as compared to the subject.   The total net adjustment is -10% or $1.17/SF.   The adjustment price per square foot is $10.50."

{¶ 8}   The report further identifies an 11.3-acre property on Elbee Road, in

Moraine, containing "one industrial warehouse with a 3 story office section on a slab foundation," consisting of 271,864 square feet, that sold on January 3, 2006 for $2,200,000.00. According to the report, it "is larger in size and +10% adjustment is warranted. It is larger in building size, and -20% adjustment is warranted. The building design is superior and a -20% adjustment is warranted. The other factors are considered to be similar as compared to the subject. The total net adjustment is +10% or +$0.81/SF. The adjusted price per square foot is $8.90."

{¶ 9} Finally, the report identifies a 3.2495-acre property on East River Road, in Moraine, containing a "one story heavy manufacturing structure on a slab foundation," with a size of 78,000 square feet, that sold on May 3, 2007 for $1,250,000.00. The report indicates that this property is "larger in land size and +10% adjustment is warranted. It is smaller in building size and a -20% adjustment is warranted. It is superior in design and a -25% adjustment is warranted. The other factors are considered to be similar as compared to the subject. The total net adjustment is -35% or -$5.59/SF. The adjusted price per square foot is $10.39." The report indicates that this property is "multi-tenant."

{¶ 10} The report concludes as follows: "After making the proper adjustments to each of the sales, the adjusted price range for the comparables is between $8.90/SF and $10.50/SF. The most weight is given to the middle of the range at $10.00/SF. Therefore, 115,500 square feet at $10.00/SF indicates $1,155,000, which is rounded to **$1,150,000.**"

{¶ 11} At the hearing, Nick Demana testified as follows regarding other property owned by NTD::

Well, actually, the one we sold back in 2003 approximately was our

facility on York Street in Springfield. And it took approximately a year to a year and a half to sell. But it was listed with Doug Cox at Levine Realty. And I do not recall the final sale price, but it was in the neighborhood of $10 a square foot.

We had a building for sale in Dayton. And obviously, these are parts of a Benjamin Steel Operation. So they are somewhat similar to this facility. And the building in Dayton we had listed for sale for two or three years. Never had one bite on it, if you would, never had one offer. And we had it listed for $15 a square foot approximately. And the realtor company that we had it listed with certainly showed us lots of information similar to appraisal-type stuff indicating industrial buildings of our type in the $8 to $15 a square foot range as the going market price four years ago.

**{¶ 12}** When Sodders asked Coe why the appraisal value was less than the purchase price of the property, the following exchange occurred:

MR. COE: It is a very specific - - specified use as a crane building. Okay. But if you put it on the market today, how many people are willing to buy a crane building with a 24-plus height - -

MR. SODDERS: I have no idea.

MR. COE: That's right. Simply none. * * *

**{¶ 13}** Teresa Deman indicated that the $3,000,000.00 figure in her complaint "was a figure that was provided by our finance department and our cost accountant." She stated, "they are employed by Benjamin Steel Company. The number itself was also in a sense not

that you're pulling it out of the air, but there wasn't any kind of appraisal behind it. So we had to come with a number at that point in time until we could get an appraisal." Nick Demana further indicted that the estimate was based upon an amount of $25.00 a square foot for 120,000 square feet, and he stated, "we have some knowledge of what it costs to build new. And that number is certainly below that amount. And, therefore, that was the decision."

{¶ 14} Near the end of the hearing, Morrow indicated to Coe that he has "seen your comps at least two of the three on several occasions" at other hearings, and the following exchange occurred between Morrow and Coe:

MR. MORROW: You found nothing in Clark County? Nothing in any other adjoining properties? Nothing in Ohio that you felt was as comparable as these three properties?

MR. COE: The answer is I found some in Springfield but it's only 25,000 square feet. And this is 115,000. So it's only four times as many. So I thought trying to get as close within the year, which is 2006 or 2007. And there is one that I didn't use because it's sold for $5 a square foot over on US 35. And I don't think that's comparable. Yes, we can show you a lot of comp, but these are the best three comps out there.

MR. MORROW: Well, you ruled out a 25,000 square foot building. But you ruled in a 271,000 square foot building, which is 150,000 larger than this particular facility.

MR. COE: Yeah. But it's only about two times as much compared

to four times as much. And I'm showing more is less.

MR. MORROW: So the 150,000 larger is more comparable than something that is 80 or 90,000 smaller?

MR. COE: Yeah. But you're four times as much compared to two times as much.

MR. MORROW: All right. I understand. You did not even attempt to do an income approach analysis?

MR. COE. No. Because this building is an owner-occupied building. And most of the people that are buying this type of building are going to be owner-occupied.

MR. MORROW: Most of them would be. But some people rent these types of facilities; don't they?

MR. COE: Not in Springfield, Ohio.

MR. MORROW: Did you look outside of Springfield, Ohio, to see what a reasonable rental would be on this type of property?

MR COE: Again, I said it was between 50 cents all the way up to it 250 (sic). But the problem is, again, the rental of this size of building are going to be owner-occupied (sic). Not going to rent it. They are going to either subdivide it out, which is not germane. It's a long narrow building compared to a typical rectangular-type building.

**{¶ 15}** The following exchange occurred regarding the third comparable in Coe's report:

MR. MORROW: Okay.   1975 vintage.   Sold for almost $16 a square foot.   And you're evaluating this 1995 multi-tenant building at two thirds?

MR.   COE: But the answer to that is a multi-tenant, which is more desirable than a single-tenant.

MR. MORROW: So that building could be leased?

MR. COE: Yes.

MR. MORROW: And was being leased?

MR. COE: Yes, sir.

MR. MORROW: Did you look at the rental rates that were being paid on that building?

MR. COE: Yes, sir.   And it was going for 10 to 20,000 a square foot.  Not 115,000, sir.

MR. MORROW: * * * The cost approach you ruled out because of the age 10 years.  Did you even develop any information that would have demonstrated what the cost to build this facility would have been or would be?

MR. COE: Well, the cost of building the building then you have to take out the wear and tear and also the functional obsolescence because there is a super adequacy for the building and I thought that was not germane.

MR. MORROW: What would you have estimated the cost to instruct (sic) this type of building?

MR. COE: I don't know.

{¶ 16}   After BOR issued its decision, on June 8, 2009, BOE filed a Motion to Consider Additional Evidence Pursuant to R.C. 5715.05 (sic), which NTD opposed.   On October 24, 2012, the court overruled BOE's motion.

{¶ 17}   Pursuant to the court's briefing schedule, NTD filed a brief on October 26, 2012, asserting that all of the evidence certified to the court from BOR "supports the determination that the Real Property's taxable value was $1,150,000.00."   BOE responded on November 2, 2012, arguing that Coe "ignored two of the three accepted appraisal approaches and based his entire opinion on a one-page market analysis," and that NTD's evidence "was inconsistent and not sufficiently reliable enough to justify any decrease in value."   Also on November 2, 2012, the BOR filed a brief requesting that the "value as set forth by the [BOR] be retained," and that the "reason for this value is based upon the Board's experience in hearing and evaluating the type of evidence that was presented in the past.   A typical appraisal will give three different types of value, a cost approach, a sales approach, and an income approach."   The BOR further asserted that Coe "had difficulty defending his choice of comparable properties. * * * he uses 2 of his 3 comparables frequently, which call into question their relationship to the subject property.   Further, none of the buildings is in Clark County."   The BOR asserted, "Mr. Coe did not use a local comparable that was 90,000 square feet different than the subject property, but did use an out of County comparable that was 150,000 square feet different than the subject."

{¶ 18}   In adopting the Auditor's original valuation of NTD's property, the trial court indicated that NTD "points to the credentials of Mr. Coe as a real estate appraiser as establishing that the contents of his report and testimony as 'sufficient[,] probative and

competent evidence' that entitles it to a reduction in the taxable value of the real property to $1,150,000." The court noted that BOE "points to several weaknesses in Mr. Coe's appraisal that put its reliability (and therefore its competence) in doubt." The court noted Coe's sole reliance upon a market value analysis involving properties outside of Clark County, "despite the presence of comparable properties within Clark County. Mr. Coe was admittedly aware of these properties, but cited size differentials as making them less useful." The court further noted that Coe rejected the income method, "arguing that given the unique characteristics of the property, it was unlikely that anyone other than the current manufacturer would use it." The court noted that "Appellees contradict Mr. Coe's argument by pointing to a comparable building used by Mr. Coe in his report (sale 3) that had been rented out to multiple tenants." The court noted BOE's assertion that, "given Mr. Coe's opinion of the building as one containing unique characteristics, Mr. Coe should have used the cost method," since "there is evidence within Mr. Coe's own report that the cost method is 'particularly applicable when relatively unique or specialized improvements are located on the site." (sic)

{¶ 19} Finally, the court noted BOE's assertion that the "original revaluation request of $3,000,000.00 produced by the owners of the property serves to contradict Mr. Coe's analysis." The court rejected this assertion, since the "taxpayers could lawfully change their requested valuation up to the point of the hearing, [and] there is no reason to penalize them for doing what they had a right to do. If this change in requested valuation took Appellees by surprise at the time of the hearing, they should have requested a rescheduling at that time."

{¶ 20} The court noted that both NTD and BOE "offer an interpretation" of Ohio

Admin.Code 5703-25-07.[1] The court noted that the above section "unambiguously applies

---

[1]* * *

(D) In arriving at the estimate of true value the county auditor may consider the use of any or all of the recognized three approaches to value:

(1) The market data approach--The value of the property is estimated on the basis of recent sales of comparable properties in the market area after allowance for variation in features or conditions. The use of the gross rent multiplier is an adaptation of the m-arket [sic] approach useful in appraising rental properties such as apartments. This is most applicable to the types of property that are sold often.

(2) The income approach--The value is estimated by capitalizing the net income after expenses, including normal vacancies and credit losses. While the contract rental or lease of a given property is to be considered the current economic rent should be given weight. Expenses should be examined for extraordinary items. In making appraisals by the income approach for tax purposes in Ohio provision for expenses for real property taxes should be made by calculating the effective tax rate in the given tax district as defined in paragraph (E) of rule 5703-25-05 of the Administrative Code, and adding the result to the basic interest and capitalization rate. Interest and capitalization rates should be determined from market data allowing for current returns on mortgages and equities. The income approach should be used for any type of property where rental income or income attributed to the real property is a major factor in determining value. The value should consider both the value of the leased fee and the leasehold.

(3) The cost approach--The value is estimated by adding to the land value, as determined by the market data or other approach, the depreciated cost of the improvements to land. In some types of special purpose properties where there is a lack of comparable sales or income information this is the only approach. Due to the difficulties in estimating accrued depreciation, older or obsolete buildings value estimates often vary from the market indications.

(E) Ideally, all three approaches should be used but due to cost and time limitations, the cost approach as set forth in these rules is generally an appropriate first step in valuation for tax purposes. Values obtained by the cost approach should always be checked by the use of at least one of the other approaches if possible. In the event the auditor uses approaches of estimating true value other than the cost approach appropriate notations shall be shown on the

its constraints only to auditors employed by the government." It then continued as follows:

Appellant NTD argues that the use of "may" in Section 7703-25-07(D) (sic) makes it clear that use of more than one methodology is entirely discretionary. Given the text of subsection (E), however, this reading is inapplicable. The use of "should" does not express discretion in the same way that "may" would. Further, the statute lists the cost approach (and not the market approach) as a "first step in valuation for tax purposes" but goes on to say that "the cost approach should always be checked by the use of at least one of the other approaches if possible." "[I]f possible," is not the same as "if convenient," which is seemingly the meaning Appellants would wish it to have. Rather the cross-checking can only be skipped when time constraints or financial constraints make it untenable. Nor is there any reason to believe that the cross-checking is less necessary for the market approach than the cost approach. If anything, the fact that the market approach is not the "first step" suggests such a view.

In short if OAC section 7703-25-07(sic) has any bearing on this matter, it supports the arguments advanced by Appellees, and casts doubt on the competence of Mr. Coe's valuation advanced by the Appellant.

**{¶ 21}** The court continued as follows:

Appellee [BOR] argues for an affirmation of $3,350,000.00.

---

property record. Ohio Admin.Code 5703-25-07.

However, this Court may not simply rubber stamp the decision of the [BOR]. Unfortunately, the [BOR] included no discussion in its sparse merits brief as to how it arrived at $3,350,000.00 as the true value of the property. There is a possibility that this number was arrived at through the use of the real property owner's original estimation as to the value of rebuilding the property, but this number is hardly more scientific or "sufficient[,] probative and competent evidence" than the report produced by Mr. Coe. Absent reasoning as to why the board arrived at a "true value" of $3,350,000.00, this Court cannot adopt this number merely because it was adopted by the [BOR]; doing so would violate the role of this Court as more than a mere rubber stamp on the decision of the [BOR].

Appellee [BOE] argues for the reinstatement of the Auditor's original estimate as to the value of the property. It cites the Ohio Supreme Court's holding that in cases such as these the Auditor's original valuation is "presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment." [citing *Wheeling Steel Corp. v. Evatt*, 143 Ohio St. 71, 54 N.E.2d 132 (1944)]. The Auditor's evaluation "thus forms in most cases a default valuation that must be preferred and adopted if the appellant [. . .] fails to prove a different value of the property." [citing *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 915 N.E.2d 1196 (2009)].

{¶ 22} NTD asserts three assignments of error herein. We will consider NTD's

first two assignments of error together.   They are as follows:

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED A REVERSIBLE ERROR OF LAW WHEN IT FOUND THAT NTD PROPERTIES DID NOT CARRY ITS BURDEN OF PROOF SHOWING THAT IT WAS ENTITLED TO A REDUCTION IN VALUE OF THE SUBJECT PROPERTY. THE TRIAL COURT WRONGLY FOUND THAT NTD PROPERTIES FAILED TO CARRY THIS BURDEN OF PROOF DUE TO ITS APPRAISAL NOT BEING SUFFICIENT, PROBATIVE, AND COMPETENT.

And,

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR OF LAW WHEN IT ADOPTED THE AUDITOR'S ORIGINAL VALUE OF $4,396,750.00 AS THE "TRUE VALUE" OF THE SUBJECT PROPERTY. THE TRIAL COURT WAS OBLIGATED TO CONSIDER THE EVIDENCE IN THE SUMMARY APPRAISAL REPORT AND THE TESTIMONY TO DETERMINE THE SUBJECT PROPERTY'S VALUE.

{¶ 23}   NTD asserts that the trial court "committed reversible error when it held that the Ohio Adm.Code 5703-25-07(D) required Mr. Coe to appraise the Subject Property using the cost approach and to cross-check that approach with either the market or income approaches.   The Trial Court also acted unreasonably and abused its discretion in its criticisms of Mr. Coe's appraisal methodology."   NTD asserts that since it carried its burden of proof, the trial court erred in presuming the validity of the auditor's value.   We agree that

on this record the trial court erred by reverting to the auditor's original value.

{¶ 24} As noted by the Sixth District:

R.C. 5717.01 provides for the appeal of a decision of a county board of revision to the Board of Tax Appeals ("BTA"). Alternatively, R.C. 5717.05 provides that such an appeal may be taken directly to the appropriate county court of common pleas. Thus, the common pleas court and the BTA fulfill the same function when reviewing a decision of a board of revision, and BTA case law may be applied to the common pleas court proceedings in such appeals. *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision*, 123 Ohio App. 3d 166, 172, 703 N.E.2d 846, 850 (6th Dist. 1997).

{¶ 25} We further note that the "true value of real property is ' "the amount for which that property would sell on the open market by a willing seller to a willing buyer."' * * * ." *Dayton-Montgomery Cty. Port Authority v. Montgomery Cty. Bd. of Revision,* 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 10. As this Court has previously noted:

For tax purposes, the county auditor must determine the "true value" of each parcel of real estate from the best sources of information available with the rules prescribed by R.C. Chapter 5713 and R.C. 5715.01 and with "uniform rules and methods of valuing and assessing real property as adopted, prescribed, and promulgated by the tax commissioner." R.C. 5713.03; *Park Place Properties, LLC v. Bd. of Revision of Miami Cty.,* 2d Dist. Miami No. 2001-CA-35, 2002 WL 242707, * 4 (Feb. 15, 2002). * * *

* * *

The taxpayer has the burden of proving entitlement to a decrease in valuation, and the "auditor has no corresponding burden to defend its initial valuation *until* the taxpayer has presented credible, probative evidence of the right to a reduction." *Park Place Properties at *13,* citing *Murray & Co. Marina, Inc. v. Erie Cty. Bd. Of Revision*, 123 Ohio App.3d 166, 174, 703 N.E.2d 846 (6th Dist. Erie 1997).

On an appeal from a decision of a board of revision, the trial court independently weighs and evaluates the evidence presented to make a determination regarding the valuation of a property; a trial de novo by the court of common pleas is not required, but the court may consider additional evidence submitted by the parties. R.C. 5717.05; *Black v. Bd. of Revision of Cuyahoga Cty.*, 16 Ohio St.3d 11, 14, 475 N.E.2d 1264 (1985). The common pleas court then independently values the property, and its decision is not to be reversed absent an abuse of discretion. *Siebenthaler Co. v. Montgomery Cty. Bd. of Revision,* 74 Ohio App.3d 103, 105, 598 N.E.2d 78 (2d Dist. Montgomery 1991) * * * . If the trial court finds that the evidence on which the BOR relied was not reliable or probative, it may reject the BOR's conclusion. *Berner v.* Sodders, 2d Dist. Clark No. 2010 CA 40, 2010-Ohio-4914, ¶ 33. *DCWI-77, L.L.C. v. Montgomery Cty. Aud.,* 2d Dist. Montgomery No. 24649, 2012-Ohio-728, ¶ 7, 9-10 (emphasis added).

**{¶ 26}** Finally, as this Court has noted:

"[u]pon review, neither the property valuation by a * * * board of

revision nor an auditor's appraisal is entitled to a presumption of validity. * * * Nevertheless, a taxpayer has the initial burden and obligation to prove the right to a reduction when challenging a county's auditor's valuation. * * * A taxpayer is 'not entitled to the deduction claimed merely because no evidence is adduced contra his claim.' " *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision* (1997), 123 Ohio App.3d 166, 172, 703 N.E.2d 846, quoting *W. Indus., Inc. v. Hamilton Cty. Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O.2d 427, 164 N.E.2d 741. Also, the common pleas court does not have to accept the valuation of any witness and has wide discretion to weigh the evidence and determine credibility of witnesses. Id. at 173, 703 N.E.2d 846.[] However, "[w]hether reliable and probative evidence exists in the record is itself a legal conclusion for this court's determination." *Blatt v. Hamilton Cty. Bd. of Revision*, 123 Ohio St.3d 428, 2009-Ohio-5260, 916 N.E.2d 1065, ¶ 14 (noting that an appellate court - in that case, the Supreme Court of Ohio - has the right to decide legal conclusions). *DCWI Office N., L.L.C. v. Montgomery Cty. Aud.*, 195 Ohio App. 3d 235, 2011-Ohio-4011, 959 N.E.2d 576, ¶ 49 (2d Dist.).

{¶ 27} In *Dayton-Montgomery*, the Supreme Court of Ohio determined as follows:

[W]hen the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part, and when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination. Whenever it does so, the

BTA is acting unlawfully by making a finding of value that is affirmatively contradicted by the only evidence in the record. *Id*., ¶ 27.

{¶ 28} Given the evidence presented by NTD, we conclude that the trial court erred in reverting to the auditor's valuation. Coe testified regarding his appraisal of the property and submitted his summary appraisal report, which provides that it conforms to the Uniform Standards of Professional Appraisal Practice. His report provides that he considered and declined to employ the cost method of analysis due to the age of the building and attendant depreciation. *See Dayton-Montgomery* ("The cost method is appropriately applied when * * * a building is a new structure not substantially depreciated.") His report provides that he considered but did not employ the income approach because the property is owner- occupied and difficult to subdivide. The definition of the income approach in Ohio Adm. Code 5703-25-07(D)(2) , while applicable to government employees and not Coe, supports Coe's decision to reject the income approach. That section provides in part that the "income approach should be used for any type of property where rental income or income attributed to the real property is a major factor in determining value." The comparable properties Coe used in the course of his market analysis were sold in proximity to his determination of true value. Coe further explained that Springfield has "a very, very, very limited amount of sales," and that the properties sold in Springfield, one of which sold for five dollars a square foot, were not appropriate for purposes of comparison. We conclude that sufficient, probative evidence exists in the record that affirmatively contradicts the auditor's determination, and that the trial court's decision to revert to the auditor's determination, in the absence of any evidence to support it, was unreasonable and unlawful. In other words,

we cannot affirm the trial court's determination of value since it is not supported by any evidence.

{¶ 29} NTD's first two assigned errors are sustained, and the matter is remanded with instructions to the trial court to independently determine the true value of the property.

{¶ 30} NTD's third assigned error is as follows:

EVEN ASSUMING ARGUENDO THAT THE TRIAL COURT CORRECTLY FOUND NTD PROPERTIES HAD NOT CARRIED ITS BURDEN OF PROOF FOR A REDUCED VALUE OF THE SUBJECT PROPERTY, THE TRIAL COURT STILL COMMITTED REVERSIBLE ERROR IN ADOPTING THE AUDITOR'S VALUE IN LIGHT OF THE DISCREDITED 2007 REAPPRAISAL CONDUCTED BY THE AUDITOR.

{¶ 31} Analysis of this assigned error is rendered moot by our resolution of the first two assigned errors.

{¶ 32} Judgment reversed and remanded for proceedings consistent with this opinion.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Richard F. Heil, Jr.
Wayne E. Southward
Karol C. Fox
Mark H. Gillis
William D. Hoffman

Hon. Richard J. O'Neill